Not for Publication

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **STEPHEN SNOWDY**, *et al.*,<br><br>    **Plaintiffs,**<br><br>    v.<br><br>**MERCEDES-BENZ USA, LLC and MERCEDES BENZ GROUP AG f/k/a DAIMLER AG,**<br><br>    **Defendants.** | **Civil Action No. 23-1681 (ES) (AME)**<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

This putative class action arises from an alleged defect in 2014–2017 Mercedes B-Class Electric Vehicles. (D.E. No. 1 ("Complaint" or "Compl.") ¶ 1). Plaintiffs Stephen Snowdy, Abraham Dean Liou, Kelsey Clifford, Dell Jones, Richard Ramdhanny, and Brandon Waiss (collectively, "Plaintiffs") are consumers who either purchased or leased one such vehicle. (*Id.* ¶¶ 16–78). Plaintiffs filed suit against Mercedes-Benz USA, LLC ("MBUSA") and Mercedes-Benz Group AG f/k/a Daimler AG ("MBG") (together, "Mercedes" or "Defendants") bringing claims under state law for (i) unjust enrichment; (ii) negligent misrepresentation; (iii) statutory and common law consumer fraud; (iv) breach of express warranty; and (v) breach of the implied warranty of merchantability. (*Id.* ¶¶ 184–547). Before the Court is Defendants' motion to dismiss the Complaint. (D.E. No. 21 ("Motion")). Having considered the parties' submissions, the Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, Defendants' Motion is **GRANTED** and Plaintiffs' Complaint is dismissed *without prejudice*.

I.      **BACKGROUND**

   A.      **Factual Allegations**

   This putative class action arises from an alleged defect that causes the electric motors in

2014–2017 Mercedes B-Class Electric Vehicles ("B-Class EVs" or "Class Vehicles") "to degrade

and abruptly fail, leaving the vehicle inoperable."  (Compl. ¶ 1).  Defendants are (i) MBUSA, a

Delaware corporation headquartered in Atlanta, Georgia that was allegedly responsible for

performing activities including, but not limited to, "advertising, warranties, warranty repairs,

dissemination of technical information, and monitoring the performance of Mercedes-Benz

vehicles in the United States"; and (ii) MBG, a German corporation that "engaged in the business

of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing

motor vehicles, including the Class Vehicles."  (*Id.* ¶¶ 79 & 88–90).  Plaintiffs are consumers who

either purchased or leased at least one of the allegedly defective Class Vehicles.  (*Id.* ¶¶ 16–78).

   According to the Complaint, in or around 2010, Mercedes partnered with Tesla, Inc.

("Tesla") to design and develop "the electric motor technology that was then incorporated into the

B-Class EVs."  (*Id.* ¶ 127).  After years of collaborative research and development, Plaintiffs allege

that Tesla and Mercedes designed and tested the Electric Drive Unit ("EDU"), the engine of the

Class Vehicles.  (*Id.* ¶¶ 2 & 6).  According to the Complaint, the EDU consists of three modules

that are integrated and necessary for the vehicle to operate: (i) "the motor, which provides the

power to propel the vehicle"; (ii) "the electronics, which control the operation of the motor and

the supply of electricity from the batteries[;] and" (iii) "the gearbox, which transfers torque from

the motor to the wheels."  (*Id.* ¶ 2).  Plaintiffs allege that in converting energy into movement, the

EDU generates excessive heat.  (*Id.* ¶ 115).  To ensure that the EDU does not overheat or catch

fire throughout operation, the EDU has its own dedicated cooling system, which uses a liquid

coolant that is pumped "through conduits in the EDU and back out, taking the heat with it." (*Id.*). Plaintiffs allege that a seal around the drive shaft is meant to keep the liquid coolant separated from "the electrical, electronic[,] and mechanical components that are uniquely vulnerable to exposure to liquids." (*Id.* ¶ 3). However, the Complaint alleges that "the drive shaft seal is defective in that it fails in its single task—keeping the coolant away from the EDU components" (the "Coolant Seal Defect" or the "Defect"). (*Id.* ¶ 4). Plaintiffs allege that as a result of the Coolant Seal Defect "[l]iquid coolant leaks around the drive shaft and into the EDU where the coolant causes corrosion of the electromechanical components such as the rotor, the rotor windings, and the bearings in the motor." (*Id.*). "This corrosion results in diminishing performance and eventual catastrophic failure of the EDU." (*Id.*). According to the Complaint, all B-Class EVs suffer from the Coolant Seal Defect. (*Id.*).

Plaintiffs allege that that the "[d]egradation of the EDU as a result of the Coolant Seal Defect results in partial or total failure of the EDU with little or no warning to the driver," which, they allege, is incredibly dangerous, given that the defect may arise while driving. (*Id.* ¶ 5). In other words, they allege that "[t]he consequences of the Coolant Seal Defect are catastrophic. The EDU is rendered inoperable, the B-Class EVs suddenly and without prior warning lose power, and the owners are left in harm's way." (*Id.* ¶ 121).

Plaintiffs allege that each of their respective Class Vehicles failed and was rendered inoperable as a result of the Coolant Seal Defect. (*Id.* ¶¶ 16–78). After these alleged failures occurred, some of the Plaintiffs sought repair of their vehicles, including at authorized Mercedes dealerships. (*Id.*). However, they allege that when they sought repairs of their Class Vehicles, the defective EDUs were replaced with equally defective parts. (*Id.*). Plaintiffs allege that the Class Vehicles are purportedly covered by a warranty which furnishes coverage "for 48 months or

50,000 miles, whichever occur[s] first." (*Id.* ¶ 144). Nevertheless, Plaintiffs allege that their vehicles suffered damages even after the terms of the warranty expired. (*Id.* ¶¶ 16–78). As a result, Plaintiffs claim they "were harmed and suffered actual damages in the form of overpayment for their vehicles, diminished value, repairs[,] and other expenses and damages related to the Coolant Seal Defect." (*Id.* ¶ 15).

Plaintiffs also allege that Defendants knew of the Coolant Seal Defect prior to Plaintiffs purchasing or leasing their Vehicles yet failed to disclose and actively concealed the Defect from the public. (*Id.* ¶¶ 126–42). Allegedly, Defendants learned of the Coolant Seal Defect from multiple sources, which included (i) consumer complaints made directly to Defendants, collected by the National Highway Traffic Safety Association ("NHTSA"); (ii) Defendants' technical collaborations with Tesla; (iii) Defendants' pre-production development and quality assurance testing of the Class Vehicles; and (iv) warranty claims data. (*Id.* ¶¶ 10 & 122–33). Plaintiffs also allege that Defendants made misleading misrepresentations regarding the safety, quality, and reliability of the Class Vehicles. (*Id.* ¶¶ 134–42).

## B.   Procedural History

Plaintiffs initiated this action against Defendants on March 24, 2023, asserting 28 counts under state law. (*Id.* ¶¶ 184–547). Plaintiffs seek to represent a nationwide class of "[a]ll persons who purchased or leased a 2014-2017 Mercedes B-Class EV." (*Id.* ¶ 171). They also seek to represent State Sub-Classes, including Sub-Classes of "[a]ll persons who purchased or leased a 2014-2017 Mercedes B-Class EV" within the states of California, Florida, Georgia, Texas, New Jersey, New York, and Oregon. (*Id.* ¶ 172). Plaintiffs bring the following claims on behalf of a nationwide class: (i) unjust enrichment (Count 1, nationwide or, in the alternative, on behalf of the State Sub-Classes); (ii) negligent misrepresentation (Count 2, nationwide or, in the alternative, on

behalf of the State Sub-Classes); (iii) fraud by omission or fraudulent concealment (Count 3, nationwide or, in the alternative, on behalf of the State Sub-Classes); and (iv) violation of the New Jersey Consumer Fraud Act ("NJCFA") N.J.S.A. § 56:8-2, *et seq.* for unconscionable commercial practices and misrepresentations, deceptions and/or omissions (Counts 4 and 5, nationwide or, in the alternative, on behalf of the New Jersey Sub-Class).  (*Id.* ¶¶ 184–240).  Plaintiffs also raise claims based on violations of various state laws on behalf of State Sub-Classes, including for (i) consumer fraud (Counts 6, 7, and 8 (California), Count 11 (Florida), Counts 14 and 15 (Georgia), Count 20 (New York), Count 23 (Oregon), and Count 26 (Texas)); (ii) breach of express warranty (Count 9 (California), Count 12 (Florida), Count 16 (Georgia), Count 18 (New Jersey), Count 21 (New York), Count 24 (Oregon), and Count 27 (Texas)); and (iii) breach of the implied warranty of merchantability (Count 10 (California), Count 13 (Florida), Count 17 (Georgia), Count 19 (New Jersey), Count 22 (New York), Count 25 (Oregon), and Count 28 (Texas)).  (*Id.* ¶¶ 241–547).

On July 18, 2023, Defendants filed a motion to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  (D.E. No. 21-1 ("Mov. Br.")).  The Motion is fully briefed.  (D.E. No. 25 ("Opp. Br."); D.E. No. 28 ("Reply")).

## II.    LEGAL STANDARDS

### A.    Rule 12(b)(1)

Under Rule 12(b)(1), a court may dismiss a claim at the pleading stage if the court does not have jurisdiction.  "A motion to dismiss for want of standing is also properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007) (citations omitted).  Plaintiffs have the burden of establishing their standing in federal court.  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 278 (3d Cir. 2014) (citing *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 291 (3d Cir. 2005)) ("It is well established

that plaintiffs bear the burden of demonstrating that they have standing in the action that they have brought."). "Two types of challenges can be made under Rule 12(b)(1)—'either a facial or a factual attack.'" *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 632 (3d Cir. 2017) (quoting *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)). A facial attack, which Defendants raise in this case, "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to 'consider the allegations of the complaint as true.'" *Davis*, 824 F.3d at 346 (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).

### B.   Rule 12(b)(6)

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (internal quotation marks omitted) (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (internal quotation marks omitted) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426

6

(3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (noting that pursuant to Rule 12(b)(6) the Court "may consider documents that are attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case'") (first citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 559 (3d Cir. 2002); and then quoting 5B Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1357 (3d ed. 2004)). Thus, "a court may consider 'an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" *Fuller v. Rozlin Fin. Grp., Inc.*, No. 19-20608, 2020 WL 5036215, at *2 (D.N.J. Aug. 26, 2020) (quoting *Clemons v. Midland Credit Mgmt., Inc.*, No. 18-16883, 2019 WL 3336421, at *2 (D.N.J. July 25, 2019)).

### C.     Rule 9(b) Heightened Pleading Standard

Where pleading fraud, the plaintiff "must meet a heightened pleading standard under [Rule] 9(b)." *Zuniga v. Am. Home Mortg.*, No 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016). Rule 9(b) states that when "alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "In order to satisfy Rule 9(b), a complaint must provide all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *United States v. Eastwick Coll.*, 657 Fed. App'x 89, 93 (3d Cir. 2016) (internal quotation marks omitted) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). But plaintiffs

"need not, however, plead the 'date, place or time' of the fraud, so long as they use an 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Rolo v. City Investing Co. Liquidating Tr.*, 155 F.3d 644, 658 (3d Cir. 1998) (quoting *Seville Indus. Machinery v. Southmost Machinery*, 742 F.2d 786, 791 (3d Cir. 1984)).

## III.   DISCUSSION

### A.   Standing to Bring Claims on Behalf of Putative Class Members in Other States

Defendants contend that Plaintiffs lack standing to bring claims on behalf of unnamed plaintiffs in states in which the named Plaintiffs themselves have suffered no alleged injury. (Mov. Br. at 6–7). More specifically, Defendants argue that Plaintiffs improperly seek to represent people outside of the states in which they either reside or purchased or leased their Class Vehicles by bringing nationwide claims. (*Id.* at 6 (citing Compl. ¶¶ 19, 31, 39, 50, 62 & 71)). Defendants argue that Plaintiffs cannot pursue nationwide claims because Plaintiffs cannot assert claims under the laws of states where Plaintiffs have suffered no injury. (*Id.* at 6–7). In Opposition, Plaintiffs contend that Defendants' argument that Plaintiffs lack standing to raise claims on behalf of class members from other states is merely "'a premature motion to deny class certification under Rule 23,' and therefore should be considered, if at all, at the class certification stage, not on a motion to dismiss under Rule 12(b)." (Opp. Br. at 4 (citing cases)). For the reasons set forth below, the Court agrees with Defendants.

Constitutional standing is derived from Article III's "case or controversy" requirement. *Pub. Int. Rsch. Grp. of N.J., Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 117 (3d Cir. 1997). Constitutional standing consists of three elements. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). To establish standing, "[t]he plaintiff must have [i] suffered an injury in fact, [ii] that is fairly traceable to the challenged conduct

8

of the defendant, and [iii] that is likely to be redressed by a favorable judicial decision." *Id*.  Under Third Circuit law, "[s]tanding requires that the party seeking to invoke federal jurisdiction 'demonstrate standing for *each claim* he seeks to press.'"  *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 359 (3d Cir. 2015) (emphasis added) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  "The requirements for standing do not change in the class action context." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017).  In class actions, Article III standing "must be satisfied by at least one named plaintiff," while "unnamed, putative class members need not establish Article III standing."  *Neale*, 794 F.3d at 359, 362 (internal quotation marks and citations omitted).  Only after the Court addresses the class representatives' Article III standing can the Court analyze Federal Rule of Civil Procedure 23's certification requirements.  *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018) (citing *Neale*, 794 F.3d at 368).  In the context of a class action, "if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."  *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

There is disagreement amongst district courts in this Circuit "over whether plaintiffs in a class action may assert claims under the laws of states where the complaint does not allege connections between the named plaintiffs and those states."  *Cohen v. Subaru of Am., Inc.*, No. 12-8442, 2022 WL 721307, at *6 (D.N.J. Mar. 10, 2022).  Some courts have found that any problem with raising claims under several states' laws goes to the propriety of class certification, not standing.  *See, e.g.*, *Rolland v. Spark Energy, LLC*, No. 17-2680, 2019 WL 1903990, at *5 n.6 (D.N.J. Apr. 29, 2019)*; *Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co.*, No. 20-6717, 2021 WL 960875, at *6 (D.N.J. Mar. 15, 2021); *In re Valsartan, Losartan, & Irbesartan Prod.*

*Liab. Litig.*, No. 19-2875, 2022 WL 1013945, at \*4 (D.N.J. Apr. 5, 2022); (*see also* Opp. Br. at 5 n.4 (collecting cases)).  However, other courts have found that named plaintiffs "lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where [p]laintiffs have suffered no alleged injury" even before class certification.  *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020) (citations omitted); *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 21-18755, 2023 WL 6890996, at \*8 (D.N.J. Oct. 19, 2023); *McMahon v. Volkswagen Aktiengesellschaft*, No. 22-1537, 2023 WL 4045156, at \*8–9 (D.N.J. June 16, 2023); *Diaz v. FCA US LLC*, No. 21-0906, 2022 WL 4016744, at \*19 (D. Del. Sept. 2, 2022).  There is a fairly even split of authority among the cases that have previously been confronted with this issue, and there is no binding Third Circuit precedent directly on point.  For the following reasons, the Court agrees with the authority finding that named plaintiffs "lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where [p]laintiffs have suffered no alleged injury."  *Ponzio*, 447 F. Supp. 3d at 223.

The Third Circuit has repeatedly emphasized that "[a] plaintiff must 'demonstrate standing for each claim he seeks to press.'"  *Long v. SEPTA*, 903 F.3d 312, 323 (3d Cir. 2018) (quoting *Neale*, 794 F.3d at 359).  To that end, courts "do not exercise jurisdiction over one claim simply because it arose 'from the same nucleus of operative fact' as another claim."  *Neale*, 794 F.3d at 359 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).  Rather, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Lewis v. Casey*, 518 U.S. 343, 357 (1996) (internal quotation marks and citation omitted); *see also Long*, 903 F.3d at 325 ("[A]ny harm to unnamed class members cannot constitute injury in fact.").  Here, as Defendants point out, Plaintiffs seek to

represent people outside of those states in which they allege they reside or purchased or leased Class Vehicles.  (Compl. ¶¶ 185, 193, 205, 216 & 229).  However, the Complaint does not allege that the named Plaintiffs were injured under the laws of states where they never resided or purchased or leased the Class Vehicles.  As such, the named Plaintiffs "who incur injuries under the laws of their respective states cannot assert Article III standing to pursue separate, distinct state-law claims under the laws of other states where they suffered no alleged injury."  *Tijerina*, 2023 WL 6890996, at *8 (citation omitted); *see also In re Sensipar (Cinacalcet Hydrochloride Tablets) Antitrust Litig.*, No. 2895, 2022 WL 736250, at *17 (D. Del. Mar. 11, 2022) (finding that the named plaintiffs "cannot premise Article III standing for claims outside of the [fifteen] states on the injuries allegedly suffered by putative, unnamed class members in other states").  Because Plaintiffs lack standing to bring state-specific claims outside the states in which they suffered an injury, the purported nationwide claims premised on laws of states unrepresented by Plaintiffs do not present a valid "case or controversy" under Article III.  *Tijerina*, 2023 WL 6890996, at *8; *see also Ponzio,* 447 F. Supp. 3d at 223 ("Plaintiffs lack standing to assert claims on behalf of unnamed plaintiffs in jurisdictions where Plaintiffs have suffered no alleged injury."); *McGuire v. BMW of N. Am., LLC*, No. 13-7356, 2014 WL 2566132, at *6 (D.N.J. June 6, 2014) ("Plaintiff here lacks standing to assert claims under the laws of the states in which he does not reside, or in which he suffered no injury.").

Plaintiffs' arguments in opposition are unavailing.  To start, Plaintiffs contend that Defendants' argument that Plaintiffs lack standing to raise claims on behalf of class members from other states is merely "'a premature motion to deny class certification under Rule 23,' and therefore should be considered, if at all, at the class certification stage, not on a motion to dismiss under Rule 12(b)."  (Opp. Br. at 4 (citing cases)).  The Court is not convinced.  As discussed, "if none of

11

the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea*, 414 U.S. at 494. "The requirements for standing do not change because Plaintiffs fashion their claims in a purported nationwide class." *Tijerina*, 2023 WL 6890996, at *8 (citing *Horizon*, 846 F.3d at 634). Though some courts "have delayed their consideration of the issue of standing until a motion for class certification is made, this order of decision-making is not rigid." *Diaz*, 2022 WL 4016744, at *19 (citing *Daubert v. NRA Grp., LLC*, 861 F.3d 382, 395 (3d Cir. 2017)). Rather, as the court in *Sensipar* noted, "[h]ere, since the [c]ourt is only confronted with a challenge to Article III standing, and has not yet reached the stage of considering class certification, there would be no practical benefit to waiting to decide standing until after a decision on class certification." *Sensipar*, 2022 WL 736250, at *17 (citation omitted). This is consistent with the court's well-reasoned analysis in *In re Wellbutrin XL Antitrust Litig.*, decided in the Eastern District of Pennsylvania, which explained:

> A ruling as to the named plaintiffs' standing depends in no way upon the standing of proposed class members. . . .
>
> The alternative proposed by the plaintiffs would allow named plaintiffs in a proposed class action, with no injuries in relation to the laws of certain states referenced in their complaint, to embark on lengthy class discovery with respect to injuries in potentially every state in the Union. At the conclusion of that discovery, the plaintiffs would apply for class certification, proposing to represent the claims of parties whose injuries and modes of redress they would not share. That would present the precise problem that the limitations of standing seek to avoid. *The Court will not indulge in the prolonged and expensive implications of the plaintiffs' position only to be faced with the same problem months down the road.*

*In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 155 (E.D. Pa. 2009) (emphasis added).

Next, Plaintiffs contend that the Third Circuit's decisions in *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 480 (3d Cir. 2018) and *Neale v. Volvo Cars of North America, LLC*, 794 F.3d 353, 368 (3d Cir. 2015) indicate that plaintiffs in a class action may assert state-law claims on behalf of out-of-state class members.  (Opp. Br. at 5).  The Court is not convinced. *Mielo* concerned a putative class action arising under a violation of *federal* law, rather than state-specific laws, and thus does not address the same issues regarding standing to assert various state-law claims.  *Mielo*, 897 F.3d at 473–76.  As another court in this District has pointed out, the Third Circuit in *Mielo* did *not* find that "named plaintiffs can assert claims on behalf of putative class members which the named plaintiffs themselves do not have standing to bring."  *Tijerina*, 2023 WL 6890996, at *8 n.2.  As such, Plaintiffs' reliance on *Mielo* is unavailing.

*Neale* is also distinguishable.  In *Neale*, the Third Circuit was considering an appeal of an order denying a motion for class certification and addressed whether unnamed, putative class members need to establish Article III standing in a class action.  *Neale*, 794 F.3d at 358–59.  The Third Circuit determined that "unnamed, putative class members need not establish Article III standing.  Instead, the 'case or controversies' requirement is satisfied so long as a class representative has standing."  *Id.* at 362.  *Neale* did not address whether named plaintiffs can assert claims on behalf of putative class members which the named plaintiffs themselves do not have standing to bring.  *Tijerina*, 2023 WL 6890996, at *8 n.2.  Nevertheless, as Plaintiffs point out (Opp. Br. at 5), some courts have interpreted *Neale* as permitting named class representatives who would not traditionally have Article III standing to bring claims on behalf of unnamed, putative class members who may have standing.  (Opp. Br. at 4–5 (citing *In re Valsartan*, No. 19-2875, 2022 WL 1013945, at *4 (D.N.J. April 5, 2022); *Back2Health Chiropractic Ctr., LLC v. Sentinel Ins. Co.*, No. 20-6717, 2021 WL 960875, at *6 (D.N.J. Mar. 15, 2021)).  This Court declines to

read *Neale* so broadly.  While *Neale* did not address the precise issue before the Court here—the standing of named plaintiffs to bring state-specific claims outside the states in which they suffered an injury—the Third Circuit nevertheless clearly emphasized that, *"[b]efore even getting to the point of class certification*, . . . class representatives need to present a justiciable claim."  *Neale*, 794 F.3d at 366 (emphasis added).  Thus, the Court agrees with the reasoning of the district court decisions in this Circuit that are most consistent with this rule: "named plaintiffs cannot bring claims on behalf of putative class members unless they have standing to bring those claims themselves."  *Diaz*, 2022 WL 4016744, at *19.

Finally, Plaintiffs' reliance on out-of-Circuit authority does not lead this Court to reach a contrary conclusion.  (Opp. Br. at 4–5 n.3).  To start, the Plaintiffs point to the Second Circuit's decision in *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 95 (2d Cir. 2018), which held that "[named] class action plaintiffs are not required to have individual standing to press any of the claims belonging to their unnamed class members."  (Opp. Br. at 4–5 n.3).  They also point out that the Eleventh Circuit reached a similar conclusion in *In re Zantac (Rantidine) Products Liability Litigation*, No. 21-10335, 2022 WL 16729170, at *4, 6 (11th Cir. Nov. 7, 2022), where the court held that the plaintiffs could pursue claims on behalf of class members whose claims arose under the laws of states in which no named plaintiff resided or purchased the drug product at issue in the litigation, finding that plaintiffs' "ability to raise these claims for putative class members is one of representative capacity under Federal Rule of Civil Procedure 23—not one of constitutional significance under Article III."  (Opp. Br. at 4–5 n.3).  These conclusions, however, are at odds with *Neale*'s holding that Article III standing "must be satisfied by at least one named plaintiff" in class actions.  *See Neale*, 794 F.3d at 359; *Sensipar*, 2022 WL 736250, at *17.  Further, though Plaintiffs point out that the First Circuit in *In re Asacol Antitrust Litigation*, 907 F.3d 42,

49 (1st Cir. 2018) found that named plaintiffs have Article III standing to assert claims held by absent class members where the claims of the named plaintiffs "parallel" those of the putative unnamed class members, the Third Circuit has emphasized that courts "do not exercise jurisdiction over one claim simply because it arose from the same nucleus of operative fact as another claim." *Neale*, 794 F.3d at 359 (internal quotation marks and citation omitted).  Further, though Plaintiffs cite to the Fourth Circuit decision in *Mayor of Baltimore v. Actelion Pharmaceuticals Ltd.*, 995 F.3d 123, 131 (4th Cir. 2021), that decision addressed statutory standing, not Article III standing, and as such is distinguishable.[1]

In sum, the Court finds that the named Plaintiffs can only assert claims on behalf of individuals in states where at least one named Plaintiff has standing for that claim.  Accordingly, the Court dismisses, *without prejudice*, Counts 1 through 5 of the Complaint, to the extent that they are brought on behalf of a proposed nationwide Class.  *McMahon*, 2023 WL 4045156, at *9.

### B.    Standing to Bring Claims for Injunctive and Declaratory Relief

Defendants contend that Plaintiffs' requests for injunctive and declaratory relief, including under the Georgia Unfair Deceptive Trade Practices Act ("GUDTPA"), must be dismissed.  (Mov. Br. at 7–9).  To start, they contend that Plaintiffs have not shown they lack an adequate remedy at

---

[1]    The Court likewise finds the Seventh Circuit's decision in *Morrison v. YTB International, Inc.*, 649 F.3d 533, 536 (7th Cir. 2011) distinguishable.  In *Morrison*, the named plaintiffs brought claims against YTB for violating the Illinois Consumer Fraud Act.  *Morrison*, 649 F.3d at 534–35.  The plaintiffs sought "to represent a class of everyone, in any state, who participated in YTB's home-travel-agency program."  *Id.* at 535.  YTB moved to dismiss the complaint with respect to non-Illinois class members, arguing that class members from states other than Illinois lack standing to seek relief under the Illinois Consumer Fraud Act.  *Id.* at 534–35.  Though the district court found that non-Illinois plaintiffs lacked standing, the Seventh Circuit reversed, stating that "[i]f the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law; this application of choice-of-law principles has nothing to do with *standing*, though it may affect whether a class should be certified."  *Id.* at 536.  However, in *Morrison*, at least one of the eight named plaintiffs was an Illinois resident.  *Morrison v. YTB Int'l, Inc*., 641 F. Supp. 2d 768, 775 (S.D. Ill. 2009), *vacated*, 649 F.3d 533 (7th Cir. 2011).  As such, *Morrison* did not address the precise issue before the court here—the standing of named plaintiffs to bring state-specific claims outside the states in which *none* of them suffered an injury.  And regardless, this Court is bound by the Third Circuit's controlling precedent that "[a] plaintiff must 'demonstrate standing for each claim he seeks to press.'"  *Long*, 903 F.3d at 323 (quoting *Neale*, 794 F.3d at 359).

law because they seek damages, rendering injunctive relief unwarranted.  (*Id.* at 7).  Further, they argue that Plaintiffs' injunctive claims must be dismissed because, by seeking monetary remedies, Plaintiffs have failed to meet their burden of establishing irreparable injury.  (*Id.* at 7–8).  Finally, they contend that Plaintiffs have not shown a real and immediate threat of injury because neither MBG or MBUSA sell the putative Class Vehicles any longer and because Plaintiffs are now aware of the alleged deception regarding the Coolant Seal Defect, so they are no longer able to be deceived in the future.  (*Id.* at 8–9).  In Opposition, Plaintiffs contend that they have standing to pursue injunctive and declaratory relief.  (Opp. Br. at 7).  To start, they contend that courts in this district have declined to dismiss claims for equitable relief because as a general matter, courts only dismiss claims and not remedies at this early stage.  (*Id.* at 7).  Next, they argue that the fact that they seek money damages does not mean that they fail to plausibly allege that they lack an adequate remedy at law because they may seek alternative forms of relief.  (*Id.*).  Further, they contend that their claims for injunctive relief should not be dismissed for failure to demonstrate irreparable injury because they have alleged an ongoing safety defect that poses a continuing threat of immediate harm.  (*Id.* at 8).  Finally, Plaintiffs argue that they adequately allege a threat of future injury because the "Class Vehicles are still in use, will be resold, and continue to pose hazards by the existing Defect."  (*Id.* at 8–9).  For the reasons set forth below, the Court agrees with Plaintiffs.

As other courts have held in the face of similar arguments, in general "courts only dismiss *claims*[,] not *remedies*[,] at this early stage."  *McMahon*, 2023 WL 4045156, at *11 (citation omitted); *see also Opheim v. Volkswagen Aktiengesellschaft*, No. 20-2483, 2021 WL 2621689, at *15 (D.N.J. June 25, 2021) (citing *In re Riddell Concussion Reduction Litig.*, 121 F. Supp. 3d 402, 424–25 (D.N.J. 2015)).  Were Plaintiffs' claims to survive, the Court would "still need to decide, e.g., liability, before the viability of injunctive [or declaratory] relief comes into play."  *Opheim*,

2021 WL 2621689, at *15 (rejecting defendant's argument that plaintiffs could not seek equitable relief for their fraud and consumer-protection claims because courts only dismiss claims and not remedies at this early stage); *see also Riddell*, 121 F. Supp. 3d 424 ("The [c]ourt will consider appropriate relief only when liability is established." (citations omitted)).  As such, the Court finds that it is inappropriate to dismiss Plaintiffs' claims for injunctive and declaratory relief at this stage. *McMahon*, 2023 WL 4045156, at *11 (rejecting defendants' argument that plaintiffs lacked standing to seek injunctive relief because courts only dismiss claims and not remedies at this early stage); *Rains v. Jaguar Land Rover N. Am., LLC*, No. 22-4370, 2023 WL 6234411, at *10 (D.N.J. Sept. 26, 2023); *see also Riddell*, 121 F. Supp. 3d 424.

Nevertheless, the Court finds that, contrary to Defendants' assertions, Plaintiffs have plausibly alleged that injunctive and declaratory relief are warranted in this case.  As discussed, to establish Article III standing, a plaintiff must demonstrate "(1) an injury-in-fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."  *Finkelman v. Nat'l Football League*, 810 F.3d 187, 193 (3d Cir. 2016).  "When . . . prospective relief is sought, the plaintiff must show that he is 'likely to suffer future injury' from the defendant's conduct."  *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 223 (3d Cir. 2012) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)).  In a class action case, at least one plaintiff must establish standing.  *Id.*

Here, Plaintiffs allege an ongoing safety defect in the Class Vehicles and seek injunctive relief, including, but not limited to, requiring Mercedes to: (i) treat problems arising from the Coolant Seal Defect; (ii) reassess warranty claims; and (iii) pay the cost of inspection to determine whether the Coolant Seal Defect is present in the vehicles of class members.  (Compl. at 101; Opp. Br. at 8–10).  Though it appears that one of the named Plaintiffs is no longer in possession of his

Class Vehicle, Defendants have not pointed the Court to any allegations in the Complaint supporting the argument that all named Plaintiffs have disposed of their Class Vehicles.[2]  And as to these remaining named Plaintiffs, the Complaint alleges that, to the extent they have sought repairs, those repairs have not resolved manifestations of the alleged defect or have attempted to substitute one defective part for another.  (Compl. ¶¶ 15, 26–27, 36, 43–45, 67 & 75).  "Thus, the likelihood of future injury from the allegedly unlawful conduct—the sale of, and failure to adequately repair, a product with a latent defect—is apparent, since Plaintiffs did not buy products for one-time use, but rather, for ongoing use."  *Diaz*, 2022 WL 4016744, at *14.  The continued ownership of Class Vehicles that allegedly do not perform as intended and are likely to require repeated repairs constitute "continuing, present adverse effects" permitting Plaintiffs to seek injunctive relief.  *O'Shea*, 414 U.S. at 496.

Defendants' arguments to the contrary are unavailing.  To start, relying on the Third Circuit's decision in *McNair*, Defendants contend that Plaintiffs do not have standing to seek injunctive relief because the Third Circuit has rejected "stop me before I buy again" standing arguments such as Plaintiffs' arguments here.  (Reply at 4).  The Court is not convinced.  In *McNair*, former customers sought injunctive relief against a magazine subscription marketer,

---

[2]     Though Plaintiffs allege that Snowdy sold one of his Class Vehicles, they do not allege that he sold both of his Class Vehicles.  (Compl. ¶¶ 27–28).  Further, Plaintiffs allege that Plaintiff Jones "ultimately sold the vehicle for salvage, incurring a substantial loss as a result of the Defect."  (*Id.* ¶ 56).  Nevertheless, in a class action case, only one plaintiff needs to meet the standing requirements for the lawsuit to proceed.  *Massachusetts v. EPA*, 549 U.S. 497, 518 (2007); *see also New Jersey Physicians, Inc. v. President of the United States*, 653 F.3d 234, 239 (3d Cir. 2011) ("Only one of the three named plaintiffs must establish standing . . . .").  Here, Defendants have not pointed the Court to any allegations in the Complaint supporting the argument that all named Plaintiffs have disposed of their Class Vehicles.  As such, because, as will be discussed below, the remainder of the named Plaintiffs have adequately demonstrated standing to pursue injunctive and declaratory relief, the Court will not dismiss those requests for relief.  *See, e.g.*, *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 19-1298, 2021 WL 4813753, at *13 (C.D. Cal. July 29, 2021) (denying defendants' motion to dismiss plaintiffs' claims for injunctive and equitable relief for lack of standing where plaintiffs plausibly alleged a threat of future injury based on the ongoing safety risk posed by the water pump defect even though some of the named plaintiffs no longer possessed their vehicles because defendants did not point to allegations indicating that all named plaintiffs disposed of their vehicles).

Synapse, for its deceptive business practices. *McNair*, 672 F.3d at 219. In particular, Synapse provided trial offers that evolved into long-term subscriptions, which would automatically renew unless and until the customer cancelled. *Id.* at 216. Prior to charging fees pursuant to the automatic renewal, Synapse would send customers an allegedly deceptive and uninformative automatic renewal notice postcard. *Id.* at 216–17. The plaintiffs in *McNair* filed a class action complaint on behalf of "customers of Synapse [who] were mailed a postcard advance notification of an automatic charge for an additional term or renewal of their magazine subscription(s) that failed to state that he or she is an Automatic Renewal Customer or is subject to an automatic charge." *Id.* 221–22. The *McNair* plaintiffs sought injunctive relief. *Id.* at 221. The Third Circuit held that the plaintiffs lacked Article III standing because there was no reasonable likelihood that the plaintiffs would be injured in the future. *Id.* at 225. Indeed, the plaintiffs were no longer Synapse customers "and thus [were] not . . . subject to Synapse's allegedly deceptive techniques for obtaining subscription renewals." *Id.* at 224. As such, the Third Circuit concluded that while it could not definitively say that Synapse's former customers will not get fooled again, it can hardly be said that they "face a likelihood of future injury when they *might* be fooled into inadvertently accepting a magazine subscription with Synapse and *might* be fooled by its renewal tactics once they accept that offer." *Id.* at 225 n.15.

As already described above, here, Plaintiffs allege an ongoing safety defect in the Class Vehicles. (Compl. at 101; Opp. Br. at 8–10). Defendants fail to explain why Plaintiffs seeking repair of a safety defect in their vehicles must allege an intent to repurchase the Class Vehicles in the future to adequately demonstrate standing for injunctive relief. Unlike the plaintiffs in *McNair*, "who were already aware of the allegedly deceptive business practices from which they sought future protection, and were thus unlikely to contract with or purchase from the defendants again,

Plaintiffs here are not insulated against future harms flowing from [Defendants'] conduct, which has allegedly damaged them already." *Diaz*, 2022 WL 4016744, at *14 (citing *McNair*, 672 F.3d at 225) (internal quotation marks omitted).  Because Defendants have not pointed the Court to any allegations in the Complaint supporting the argument that all named Plaintiffs have disposed of their Class Vehicles, the Court concludes that, at least as to Plaintiffs who may still possess their Class vehicles, Plaintiffs have plausibly alleged a threat of future injury based on the ongoing safety risk posed by the Coolant Seal Defect.  *Diaz*, 2022 WL 4016744, at *14 *Pascal v. Nissan N. Am., Inc.*, No. 20-0492, 2021 WL 8441763, at *6 (C.D. Cal. July 8, 2021); *Sonneveldt*, 2021 WL 4813753, at *13.[3]

Next, Defendants argue that Plaintiffs' claims for injunctive relief fail because they have an adequate remedy at law.  (Mov. Br. at 7).  Likewise, they argue that Plaintiffs' claims for injunctive relief must be dismissed because an injury is irreparable only if it cannot be undone through monetary remedies.  (*Id.* at 7–8).  Again, however, the continued ownership of Class Vehicles that allegedly do not perform as intended and are likely to require repeated repairs constitute continuing, present adverse effects permitting Plaintiffs to seek injunctive relief. Defendants do not explain how monetary damages would adequately remedy this harm in a manner equivalent to Plaintiffs' requests for injunctive relief.  *Pascal*, 2021 WL 8441763, at *6.  For the same reasons, because Plaintiffs seek injunctive relief to remedy continuing, present adverse effects in Class Vehicles that most of them allegedly still own, the Court also determines that Plaintiffs have plausibly alleged an irreparable injury that cannot be undone through monetary remedies alone.

---

[3]     Defendants also contend that Plaintiffs have not demonstrated a real and immediate threat of future injury because Defendants no longer sell the putative Class Vehicles.  (Mov. Br. at 8).  Again, this argument does not address why Plaintiffs cannot seek injunctive and/or declaratory relief to remedy the defects in vehicles they still own.  *See, e.g., Pascal*, 2021 WL 8441763, at *6 n.4.

Further, Plaintiff Clifford, who asserts a claim under the GUDTPA on behalf of the Georgia Sub-Class, can pursue injunctive relief under the GUDTPA.  "To have standing to seek injunctive relief under the [G]UDTPA, a plaintiff must show . . . that she is likely to be damaged in the future by some deceptive trade practice of the defendant." *Bolinger v. First Multiple Listing Serv., Inc.*, 838 F.Supp.2d 1340, 1364 (N.D. Ga. 2012) (internal quotation marks omitted).  In *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 355 F. Supp. 3d 582, 597 (E.D. Mich. 2018) the court declined to dismiss claims for injunctive relief under the GUDTPA where vehicles allegedly "contain[ed] a serious safety defect rendering them unsafe to drive, which ha[d] not been remedied by the defendant's repeated failed attempts at repairs."  *In re FCA US*, 355 F. Supp. at 597. Plaintiffs here, including Clifford, raise similar claims: they allege that, to the extent they have sought repairs, Defendants have denied the existence of the defect and have attempted to substitute one defective part for another.  (*See, e.g.*, Compl. ¶¶ 15, 26–27, 36, 43–47, 67 & 75).  Accordingly, Plaintiffs' claims for injunctive relief under the GUDTPA may proceed.  *See, e.g.*, *Albers v. Mercedes-Benz USA, LLC*, No. 16-0881, 2020 WL 1466359, at *11 (D.N.J. Mar. 25, 2020) (finding that the plaintiffs sufficiently alleged a risk of future harm to seek injunctive relief under the GUDTPA where vehicles were still being driven and were on the roads and thus could plausibly continue to exhibit alleged defect).

Finally, because the standard for standing to seek declaratory relief requires plaintiffs to "possess constitutional standing but . . . not [to] have suffered 'the full harm expected,'" the Court determines that this standard is satisfied where Plaintiffs have established their standing to seek injunctive relief, which they have in this case.  *Diaz*, 2022 WL 4016744, at *14 (*Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 193 (3d Cir. 2004)).  In sum, the Court declines to dismiss Plaintiffs claims for injunctive or declaratory relief.

### C.      Nationwide Claims under New Jersey Law

Plaintiffs bring five claims on behalf of a nationwide class: (i) unjust enrichment (Count 1); (ii) negligent misrepresentation (Count 2); (iii) fraud by omission or fraudulent concealment (Count 3); and (iv) violation of the NJCFA via unconscionable commercial practices and misrepresentations, deceptions and/or omissions (Counts 4 and 5).   (Compl. ¶¶ 184–240). Defendants contend that these nationwide claims fail because Plaintiffs have not alleged facts sufficient to establish that New Jersey law applies nationwide in this case.  (Mov. Br. at 11).  They contend that there are no allegations that any named Plaintiff resides in, or has any other significant relationship to, New Jersey, and there are no allegations linking Defendants' conduct to New Jersey.  (*Id.* at 11–12).  Given the lack of ties to New Jersey, Defendants contend that its laws cannot be applied nationwide.  (*Id.* at 13).  Rather, they argue that the Court must apply the law with the most significant contact for each named Plaintiff which is "their individual state of residence or possibly where they purchased [or leased] a putative class vehicle."  (Reply at 3–4). As such, Defendants contend that the nationwide claims (Counts 1–5) must be dismissed because a nationwide class action is not maintainable under New Jersey law.  (Reply at 4).  In Opposition, Plaintiffs contend that Defendants' argument raises a choice-of-law challenge on which Defendants have the burden but fail to sufficiently develop.  (Opp. Br. at 12 n.8).  And regardless, Plaintiffs contend that "the choice-of-law analysis has routinely been found to be premature at the motion to dismiss [stage]."  (*Id.* at 12–13 n.8 (internal quotation marks and citation omitted)).  For the reasons set forth below, the Court agrees with Plaintiffs.

Federal courts sitting in diversity must apply the choice-of-law rules of their forum states. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  As such, New Jersey's choice of law principles are applicable to this matter.  New Jersey courts have adopted a two-part "most

significant relationship" test of the Restatement (Second) of Conflict of Laws to determine which set of laws should apply. *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 699 (D.N.J. 2011) (citation omitted).  First, the court must first determine whether there is an actual conflict between the laws of interested states; if not, the forum state law applies.  *Id.*  Second, if there is a conflict, then the court must identify which state has the "most significant relationship" to the claim by "weigh[ing] the factors set forth in the Restatement section corresponding to the plaintiff's cause of action."  *Id.* (quoting *Nikolin v. Samsung Elecs. Am., Inc.*, No. 10-1456, 2010 WL 4116997, at *3 (D.N.J. Oct. 18, 2010)) (internal quotation marks omitted).

As courts in this district have recognized, "'[b]ecause [New Jersey's choice-of-law] analysis is fact intensive, it can be inappropriate or impossible for a court to conduct that analysis at the motion to dismiss stage when little or no discovery has taken place.'" *Weston v. Subaru of Am., Inc.*, No. 20-05876, 2022 WL 1718048, at *6 (D.N.J. May 26, 2022) (quoting *In re Samsung DLP Television Class Action Litig.*, No. 07-2141, 2009 WL 3584352, at *3 (D.N.J. Oct. 27, 2009)); *see also In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-2687, 2017 WL 3131977, at *16 (D.N.J. July 20, 2017) (declining to perform choice of law analysis at motion to dismiss phase because the defendants did not explain how any of the plaintiffs' common law claims conflict with the laws of their home states); *Bang v. BMW of N. Am., LLC*, No. 15-6945, 2016 WL 7042071, at *5 (D.N.J. Dec. 1, 2016) (declining to perform choice of law analysis at motion to dismiss phase because the case involved multiple defendants with multiple claims and the choice of law analysis required facts not before the court).  In the cases where courts have addressed choice of law at the motion to dismiss stage, the issue was fully briefed by the parties or did not require a full factual record.  *See, e.g.*, *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *3–4 (D.N.J. Jan. 24, 2014); *Feldman v. Mercedes-Benz USA, LLC*, No. 11-0984, 2012 WL 6596830, at *5

(D.N.J. Dec. 18, 2012); *see also Cooper v. Samsung Elecs. Am., Inc.*, 374 F. App'x 250, 255 n.5 (3d Cir. 2010).

Here, the Court finds that it is premature to decide choice of law issues at this stage. Assuming that a conflict exists here between the laws of different states, the appropriate analysis on a motion to dismiss would be to examine which jurisdiction's laws applies to each of the named Plaintiffs' claims. While Defendants contend that New Jersey law should not apply nationwide in this case, they have not offered any analysis as to what law should be applied to each of the named Plaintiffs' claims. Rather, they only state in a conclusory fashion that the Court should apply the law of each of the named Plaintiffs' "state of residence *or possibly* where they purchased a putative class vehicle." (Reply at 4 (emphasis added)). Further, though Defendants note that there are conflicts between different states' laws (Mov. Br. at 13–14), "pointing out the mere existence of conflicts does not itself allow the Court to perform the requisite claim-by-claim analysis" necessary for a choice-of-law inquiry. *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, No. 19-2904, 2021 WL 5937742, at *13 (D.N.J. Dec. 16, 2021); *see Bang*, 2016 WL 7042071, at *5 n.5 ("Assuming that a conflict exists here between the laws of different states, the appropriate analysis on a motion to dismiss would be to examine which jurisdiction's laws apply to each of the [n]amed [p]laintiffs. No such analysis was undertaken by [d]efendant here."); *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-2765, 2017 WL 1902160, at *10 (D.N.J. May 8, 2017) ("Defendant has failed to explain how [p]laintiffs' common law claims conflict among their home states. Rather, [d]efendant simply concludes that a conflict exists and therefore the Complaint must be dismissed. Yet, as discussed, the most significant relationship test is a fact-sensitive inquiry. Accordingly, the [c]ourt declines to engage in a choice of law analysis at this juncture . . . ."). In addition, the facts currently before the Court do not permit a thorough analysis

24

of which state has the "most significant relationship" to the claims of all of the named Plaintiffs. For instance, at least one of the named Plaintiffs resides in a different state from where he purchased his Class Vehicles.  (*See, e.g.*, Compl. ¶¶ 19–21).  Limited discovery will be needed to assess which state has the "most significant relationship" to the claims of the named Plaintiffs.  *See Bang*, 2016 WL 7042071, at *5 n.5.  Because the choice-of-law issue has not been fully briefed by the parties, the Court finds that it is premature to engage in a choice-of-law inquiry at this stage. Rather, the Court requires a more developed factual record to make a choice of law conclusion, and thus declines to determine whether New Jersey law can be applied to Plaintiffs' nationwide claims in this case.  Defendants motion to dismiss on this basis is therefore denied.

Although the Court finds a choice of law analysis to be premature, it "must still determine whether Plaintiffs have succeeded in stating a claim in order for that claim to survive the pending motions to dismiss."  *Snyder v. Farnam Cos.*, 792 F. Supp. 2d 712, 721 (D.N.J. 2011).  This litigation involves six named Plaintiffs asserting nationwide claims as well as fraud-based claims, express warranty claims, and implied warranty claims under the laws of seven states: New Jersey, California, New York, Georgia, Florida, Texas, and Oregon.  (Compl. ¶¶ 184–547).  In moving to dismiss the named Plaintiffs' unjust enrichment claims, fraud-based claims, express-warranty claims, and implied warranty claims, Defendants rely on general principles that cut across different states' laws and also cite to specific law from New Jersey, California, New York, Georgia, Florida, Texas, and Oregon that apply to certain of the Plaintiffs' claims under the laws of those states. (*See generally* Mov. Br.).  In opposing Defendants' Motion, Plaintiffs also rely on general principles that cut across different states' laws and also oppose Defendants' state-specific arguments.  (*See generally* Opp. Br.).  As such, at least at this stage, the Court will apply the laws as briefed by the parties: the Court will apply New Jersey law or general principles that cut across

different states' laws but analyze state-specific law or causes of action as appropriate.  *See McCoy v. Samsung Elecs. Am., Inc.*, No. 21-19470, 2023 WL 6140641, at *3 (D.N.J. Sept. 20, 2023); *Weston*, 2022 WL 1718048, at *6.

### D.      Unjust Enrichment (Count I)

Defendants contend that the Court should dismiss Plaintiffs' unjust enrichment claims (Count 1) for a number of reasons.  (Mov. Br. at 14–18).  To start, Defendants contend that Plaintiffs' nationwide unjust enrichment claims fail because Plaintiffs have not alleged facts sufficient to establish that New Jersey law applies nationwide in this case.  (*Id.* at 14).  As already discussed, Defendants' argument raises a choice-of-law challenge, which the Court has found to be premature to address at this stage.  As such, the Court will not dismiss Plaintiffs' unjust enrichment claims on this basis.

Although the Court finds a choice of law analysis to be premature, it must still determine whether Plaintiffs have succeeded in stating a claim for unjust enrichment in order for that claim to survive the pending motions to dismiss.  In moving to dismiss Plaintiffs unjust enrichment claims, Defendants rely on general principles that cut across different states' laws and also make state-specific arguments.  (*Id.* at 14–18).  While, as noted previously, Defendants contend that New Jersey law should not apply nationwide in this case, they have not offered any analysis as to what law should be applied to each of the named Plaintiffs' unjust enrichment claims.  Rather, they only state in a conclusory manner that the Court should apply the law of each of the named Plaintiffs' "state of residence *or possibly* where they purchased a putative class vehicle."  (Reply at 4 (emphasis added)).  Further, though Defendants note in a cursory fashion that the elements necessary to establish a claim for unjust enrichment vary materially from state to state (Mov. Br. at 13–14), they do not identify how claims for unjust enrichment conflict from state to state.  (*See*

*generally* Mov. Br. & Reply).  In Opposition, though Plaintiffs respond to Defendants' state-specific arguments (Opp. Br. at 14–15), they appear to suggest that the Court may apply New Jersey law to adjudicate their nationwide unjust enrichment claim because "unjust enrichment laws do not vary in any substantive manner between the states."  (*Id.* at 13 n.9).

"Numerous courts have held that unjust enrichment laws do not vary in any substantive manner from state to state."  *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 710-11 (D.N.J. 2011) (collecting cases).  Because Defendants have failed to identify how claims for unjust enrichment conflict from state to state, the Court will apply New Jersey law to Plaintiffs' unjust enrichment claim.  *Bedi v. BMW of N. Am., LLC*, No. 15-1898, 2016 WL 324950, at *5 (D.N.J. Jan. 27, 2016) (applying New Jersey law to the plaintiff's unjust enrichment claim where neither party identified a conflict of law); *Timing Chain*, 2017 WL 1902160, at *10, 22 n.12 (applying New Jersey law to the plaintiff's unjust enrichment claim where the defendant failed to explain how plaintiffs' common law claims conflicted among their home states and the court noted that there were no material differences between jurisdictions regarding the law of unjust enrichment).

### i.    Direct Benefit

Defendants contend that Plaintiffs' unjust enrichment claims must be dismissed because "[P]laintiffs cannot allege that they purchased their vehicles directly from either MBG or MBUSA or that they conferred a direct benefit on MBG or MBUSA."  (Mov. Br. at 15–16 n.5).  In Opposition, Plaintiffs contend that "[a]s purchasers or lessees of Mercedes' vehicles from Mercedes' authorized dealerships, Plaintiffs' connection with Mercedes is not [too] remote" to sustain a claim for unjust enrichment.  (Opp. Br. at 15).  For the reasons set forth below, the Court agrees with Defendants.

"To establish a claim of unjust enrichment in New Jersey, 'a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust.'" *Hughes v. Panasonic Consumer Elecs. Co.*, No. 10-0846, 2011 WL 2976839, at *26 (D.N.J. July 21, 2011) (quoting *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007)). In addition, "a claim for unjust enrichment requires a direct relationship between the parties." *Hammer v. Vital Pharms., Inc.*, No. 11-4124, 2012 WL 1018842, at *10 (D.N.J. Mar. 26, 2012) (citations omitted); *see also Bedi*, 2016 WL 324950, at *5. "[I]t is the plaintiff's (as opposed to a third party's) conferral of a benefit on defendant which forms the basis of an unjust enrichment claim." *Eli Lilly & Co. v. Roussel Corp.*, 23 F. Supp. 2d 460, 496 (D.N.J. 1998).

Here, Plaintiffs have failed to state a claim for unjust enrichment under New Jersey law because they have failed to allege a direct relationship between themselves and MBG or MBUSA. *See Bedi*, 2016 WL 324950, at *5–6. None of the named Plaintiffs allege that they purchased or leased their vehicles directly from either MBG or MBUSA or that they conferred a direct benefit on either MBG or MBUSA. (*See, e.g.*, Compl. ¶¶ 20–21, 32, 40, 51, 63 & 71). To be sure, some courts in this district have stated that "the 'some direct relationship' element of an unjust enrichment claim does not[,] standing alone[,] preclude a consumer from ever bringing an unjust enrichment claim against a manufacturer simply because the consumer purchased the product at issue from a third-party retailer and not directly from the manufacturer." *Stewart v. Beam Glob. Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 199 (D.N.J. 2012). Nevertheless, the majority of "[c]ourts of this District regularly dismiss unjust enrichment claims where a plaintiff fails to establish a direct relationship with an automotive manufacturer." *Stratis v. BMW of N. Am., LLC*, No. 22-6929, 2023 WL 3092188, at *14 (D.N.J. Apr. 26, 2023) (dismissing unjust enrichment claim where the plaintiff alleged that he purchased his vehicle from a BMW authorized dealership,

and not from BMW America directly, and noting that courts that have reached a contrary conclusion are in the minority); *see also Bedi*, 2016 WL 324950, at *5–6 (dismissing the plaintiff's unjust enrichment claim and holding that there is no direct relationship between the plaintiff and BMW America where the plaintiff alleged to have purchased a BMW vehicle from an authorized BMW dealership rather than from BMW America itself); *Glass*, 2011 WL 6887721, at *16.  As such, because Plaintiffs have failed to allege a direct relationship with either MBG or MBUSA, their claims for unjust enrichment (Count I) must be dismissed.[4]

     **E.**     **Fraud-Based Claims (Counts 2, 3, 4, 5, 6, 7, 8, 11, 14, 15, 20, 23 and 26)**

Here, Plaintiffs bring claims for: (i) negligent misrepresentation (Count 2); (ii) fraud by omission or fraudulent concealment (Count 3); and (iii) violations of state consumer protection laws including the NJCFA (Counts 4 and 5); the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*. (Count 6); the California Unfair Competition Law ("CUCL"), Cal Bus. & Prof. Code § 17200, *et seq*. (Count 7); the California False Advertising Law ("CFAL") Cal Bus. & Prof. Code § 17500, *et seq*. (Count 8); the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq*. (Count 11); GUDTPA, Ga. Code Ann. § 10-1-370, *et seq*. (Count 14); Georgia's Fair Business Practices Act ("GFBPA"), Ga. Code Ann. § 10-1-390, *et seq*. (Count 15); the New York General Business Law ("NYGBL"), N.Y. Gen.

---

[4]     In Opposition, Plaintiffs cite to *Edwin J. Dobson, Jr., Inc. v. Rutgers, State University*, 384 A.2d 1121 (Law. Div. 1978), for the proposition that in New Jersey, a claim of unjust enrichment does not require "privity of contract." (Opp. Br. at 15).  However, as discussed, numerous courts have held that under New Jersey law "a claim for unjust enrichment requires a direct relationship between the parties." *Hammer*, 2012 WL 1018842, at *10 (collecting cases); *see also Bedi*, 2016 WL 324950, at *5–6.  Further, Plaintiffs contend that they were the intended, or ultimate purchasers, of the Class Vehicles because dealerships must enter into a Passenger Car Dealer Agreement which includes terms that benefit customers including "due diligence review, emphasis on customer satisfaction issues, training of dealership personnel, and access to dealership electronic data," among other things.  (Opp. Br. at 15 n.13 (citing Compl. ¶¶ 153 & 157)).  Regardless, none of the named Plaintiffs allege that they purchased their vehicles directly from either MBG or MBUSA or that they conferred a direct benefit on either MBG or MBUSA.  (*See, e.g.*, Compl. ¶¶ 20–21, 32, 40, 51, 63 & 71).  And "[c]ourts of this District regularly dismiss unjust enrichment claims where a plaintiff fails to establish a direct relationship with an automotive manufacturer." *Stratis*, 2023 WL 3092188, at *14 (collecting cases).  As such, these arguments are unavailing.

Bus. Law § 349 (Count 20); the Oregon Unlawful Trade Practices Act ("OUTPA"), Or. Rev. Stat. § 646.605, *et seq.* (Count 23); and the Texas Deceptive Trade Practices-Consumer Protection Act ("TDTPA"), Tex. Bus. & Com. Code §§ 17.41, *et seq.* (Count 26).  (Compl. ¶¶ 192–277, 307–22, 348–73, 415–28, 458–78 & 510–22).[5]  Plaintiffs' common law and statutory fraud claims are based on Defendants' (i) affirmative misrepresentations regarding the safety, quality, and reliability of the Class Vehicles; and (ii) fraudulent omissions, and concealment regarding the Coolant Seal Defect.  (*Id.*).  The Court outlines the contours of Plaintiffs' common law and statutory fraud claims below.

To start, "[t]hough the precise contours of common-law omissions and representations fraud claims vary from state to state, the cause of action generally requires: (1) omissions or misrepresentations of fact; (2) in the case of omissions, a duty to disclose; (3) intent to mislead; (4) materiality; (5) justifiable reliance; and (6) damages proximately caused by that reliance." *Clark v. Prudential Ins. Co. of Am.*, 289 F.R.D. 144, 184 (D.N.J. 2013) (collecting cases).

Next, to state a claim under the NJCFA, a plaintiff must plead "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." *D'Agostino v. Maldonado*, 78 A.3d 527, 536–37 (N.J. 2013) (quoting *Bosland v. Warnock Dodge, Inc.*, 964 A.2d 741, 749 (N.J. 2009)).  "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and regulation violations." *Frederico v. Home Depot*, 507 F.3d 188, 202 (3d Cir. 2007) (quoting *Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (1994)).

---

[5]        As discussed, the Court will not engage in a choice of law analysis at this juncture.  As such, the Court will apply general principles that cut across different states' laws, and will otherwise apply the laws as alleged by the Complaint.  *McCoy*, 2023 WL 6140641, at *3; *McMahon*, 2023 WL 4045156, at * 15 n.18.

California's consumer protection statute, the CLRA, "prohibits 'unfair methods of competition and unfair or deceptive acts or practices,'" adjudged "from the vantage of a reasonable consumer." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (first quoting Cal. Civ. Code § 1770(a) (West 2022) and then quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995) (internal quotation marks omitted)). "Under the reasonable consumer standard, [plaintiffs] must show that members of the public are likely to be deceived." *Id.* (internal quotation marks omitted) (quoting *Freeman*, 68 F.3d at 289). Where the unfair acts involve advertising, the advertisements in question need not be false, since "actually misleading [advertisements or those] which ha[ve] a capacity, likelihood[,] or tendency to deceive or confuse the public" will suffice. *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002) (internal quotation marks and citation omitted). When a CLRA claim is based on omission, the omission must be "contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 996 (N.D. Cal. 2013) (internal quotations marks and citation omitted). Next, a CUCL claim may be based on "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. Thus, "it prohibits three separate types of unfair competition: (1) unlawful acts or practices, (2) unfair acts or practices, and (3) fraudulent acts or practices." *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1091 (S.D. Cal. 2010). Further, the CFAL prohibits a company from producing an advertisement that "is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

Next, under Florida's consumer protection statute, the FDUTPA, plaintiffs must show "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Washington v. LaSalle*

*Bank Nat'l Ass'n*, 817 F. Supp. 2d 1345, 1350 (S.D. Fla. 2011) (citing *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. Dist. Ct. App. 2006)); *see also* Fla. Stat. Ann. § 501.201 *et seq.* (2022). Under the FDUTPA, a deceptive practice is one that is likely to mislead consumers.  *Id.*

With respect to the GUDTPA, that statute prohibits "deceptive trade practice[s]" such as "[r]epresent[ing] that goods or services are of a particular standard, quality, or grade . . . if they are of another"; "[r]epresent[ing] that goods or services have . . . characteristics, . . . uses, benefits, or quantities that they do not have"; "[a]dvertis[ing] goods or services with intent not to sell them as advertised"; and "[e]ngaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding."  O.C.G.A. § 10-1-372(a).  Further, a private party seeking to recover under the GFBPA must allege three elements: (1) defendant's violation of the Act, (2) an injury and (3) a causal connection between the two.  *Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 139 (2006).  Unfair practices include, inter alia, "[r]epresenting that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another" and "[a]dvertising goods or services with intent not to sell them as advertised." OCGA § 10–1–393(b).

Next, to establish a prima facie case under Section 349 of the NYGBL, "plaintiffs must demonstrate that '(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result.'"  *In re Scotts EZ Seed Litig.*, No. 12-4727, 2013 WL 2303727, at *10 (S.D.N.Y. May 22, 2013) (quoting *Maurizio v. Goldsmith,* 230 F.3d 518, 521 (2d Cir. 2000)).  "[Deceptive acts are those] likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir.2000) (internal quotation marks and citation omitted).

With respect to the OUTPA, to establish a violation, a plaintiff must show that "(1) the defendant committed an unlawful trade practice; (2) plaintiff suffered an ascertainable loss of money or property; and (3) plaintiff's injury (ascertainable loss) was the result of the unlawful trade practice." *Pearson v. Phillip Morris, Inc.*, 361 P.3d 3, 28 (Or. 2015).

Finally, to prove a claim under the TDTPA, a plaintiff must establish that defendant violated the specific prohibitions of Texas Business and Commercial Code Annotated §§ 17.46 and 17.50, which include failing to disclose information concerning goods or services or using deceptive representations in connection with goods or services. The Texas Supreme Court has held that a plaintiff can prove a "false, misleading[,] or deceptive act[]" as defined in the TDTPA by demonstrating "an act or series of acts which has the capacity or tendency to deceive an average or ordinary person, even though that person may have been ignorant, unthinking[,] or credulous." *Spradling v. Williams*, 566 S.W.2d 561, 562 (Tex. 1978).

As stated above, Plaintiffs' common law and statutory fraud claims are based on Defendants' alleged (i) affirmative misrepresentations regarding the safety, quality, and reliability of the Class Vehicles; and (ii) fraudulent omissions and concealment regarding the Coolant Seal Defect. (Compl. ¶¶ 192–277, 307–22, 348–73, 415–28, 458–78 & 510–22). Defendants move to dismiss Plaintiffs' common law and statutory fraud-based claims contending that Plaintiffs' allegations are insufficient to demonstrate (i) fraudulent misrepresentations; or (ii) fraudulent omissions and concealment. (Mov. Br. at 26–30 & 33–36). For the reasons below, the Court finds that Plaintiffs fail to allege actionable misrepresentations. Further, the Court finds that Plaintiffs fail to allege sufficient facts to support a plausible inference that Defendants had knowledge of the alleged defect prior to sales of the Class Vehicles, or any time thereafter, such that their fraud by

33

omission and concealment claims could succeed.  Thus, the Court dismisses all of Plaintiffs' fraud-based claims, including Counts 2, 3, 4, 5, 6, 7, 8, 11, 14, 15, 20, 23 and 26.

### i.      Affirmative Misrepresentations

To support their common law and statutory fraud claims, Plaintiffs claim that Defendants made misrepresentations and misleading partial disclosures regarding the safety and reliability of the Class Vehicles.  (*See, e.g.*, Compl. ¶¶ 20–22, 33, 41, 52, 64, 71–72, 136–37 & 148).  In moving to dismiss these claims, Defendants contend that that the Complaint is devoid of any actionable misrepresentations made by either MBG or MBUSA with respect to the Coolant Seal Defect.  (Mov. Br. at 26–30).  Further, they contend that any alleged misrepresentations are not actionable because "[P]laintiffs do not allege the date, time, and place they saw these representations" in accordance with the pleading requirements of Rule 9(b).  (*Id.* at 28).  In Opposition, Plaintiffs contend that "[t]he Complaint is replete with misrepresentations" that Defendants made to Plaintiffs regarding the Class Vehicles.  (Opp. Br. at 32–33).  Further, they contend that the Complaint adequately sets forth what materials the Plaintiffs reviewed when they purchased their vehicles, when they did so, and what information they relied on in making their purchasing decisions in accordance with the pleading requirements of Rule 9(b).  (*Id.* at 34).  For the reasons set forth below, the Court agrees with Defendants and finds that Plaintiffs have failed to allege any actionable misrepresentations.

The pleading standard governing Plaintiffs' claims grounded in fraud is set forth in Rule 9(b), which provides that, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  It is well-established in this Circuit that Rule 9(b) applies when the "factual allegations that support a particular legal claim"

make clear that the claim—regardless of how it is denominated—is grounded in fraud. *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 288 (3d Cir. 1992).[6]  And here, the parties appear to agree that the Rule 9(b) standard applies to Plaintiffs' fraud-based claims.  (*See, e.g.*, Mov. Br. at 26–30; Opp. Br. at 32–34).  As such, the Court evaluates Plaintiffs' fraud-based claims that are based on misrepresentations under Rule 9(b).  *See Diaz*, 2022 WL 4016744, at *23 (applying Rule 9(b) to CLRA, FDUTPA, and NYGBL claims because they sounded in fraud); *Skeen v. BMW of N. Am., LLC*, No. 13-1531, 2014 WL 283628, at *8–9 (D.N.J. Jan. 24, 2014) (applying Rule 9(b) to NJCFA and GFBPA claims); *Sony*, 758 F. Supp. 2d at 1088 (holding that CUCL, CFAL, and CLRA claims "are rooted in theories of fraudulent concealment and fraudulent misrepresentation and therefore must satisfy Rule 9(b)'s heightened pleading requirements"); *Reynolds v. FCA US LLC*, 546 F. Supp. 3d 635, 655 (E.D. Mich. 2021) (stating that 9(b) applied to GUDTPA claim); *Martell v. General Motors LLC*, 492 F. Supp. 3d 1131, 1145 (D. Or. 2020) (applying Rule 9(b) to OUTPA claim); *Marcus v. Apple Inc.*, No. 14–03824, 2015 WL 151489, at *3 (N.D. Cal. Jan. 8, 2015) ("Plaintiffs' fraud-based [TDTPA] claims alleging false, misleading, or deceptive acts or practices are similarly subject to FRCP 9(b)." (citation omitted)).  A "plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'  To satisfy this standard, the plaintiff must plead or allege the date, time[,] and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico*, 507 F.3d at 200 (citations omitted).

---

[6]     Here, Plaintiffs indicate that their negligent misrepresentation claim (Count 2) is also based on Defendants' misrepresentations and omissions.  (Opp. Br. at 44).  As stated, it is well-established in this Circuit that Rule 9(b) applies when the "factual allegations that support a particular legal claim" make clear that the claim—regardless of how it is denominated—is grounded in fraud. *Shapiro*, 964 F.2d at 288.  As such, the Court applies Rule 9(b) to Plaintiffs' negligent misrepresentation claim.

Here, the Court finds that Plaintiffs have failed to allege facts that support plausible allegations of fraud by misrepresentation.  To start, to support their claim that Defendants made fraudulent misrepresentations, Plaintiffs allege that "Mercedes held out the Class Vehicles as having superior engineering and performance, despite its knowledge that the Coolant Seal Defect represented a flaw that rendered the Class Vehicles short of industry standards for engineering, and substantially impaired the Class Vehicles' performance and life expectancy."  (Compl. ¶ 135).  They further allege that "[t]he Mercedes Defendants together jointly developed sales and marketing materials, including on the Mercedes website[,] and defined and described the features of the Class Vehicles on the Monroney sticker, affixed to every Class Vehicle, that included no references to or notice about the Coolant Seal Defect."  (*Id.* ¶ 136).  They claim that "Mercedes' concealment of the Coolant Seal Defect in light of the partial disclosures made in their marketing and sales materials, including, but not limited to, the Monroney sticker, render those partial disclosures misleading."  (*Id.*).  Plaintiffs also allege that they relied on Defendants' misleading advertising materials when making their purchasing decisions, which touted the quality, dependability, and safety of the Class Vehicles.  (*Id.* ¶¶ 20–22 ("Mr. Snowdy observed Mercedes' descriptions of itself as a builder of high-quality and safe vehicles."); *id.* ¶ 33 ("Mr. Liou viewed promotional materials that extolled the reliability, safety and dependability of the B-Class EV."); *id.* ¶ 41 ("Ms. Clifford researched the safety and reliability of the B-Class EV, including visiting Mercedes' website."); *id.* ¶ 52 ("Before purchasing his Class Vehicle, Mr. Jones researched the safety and reliability of the B-Class EV, including visiting Mercedes' website and watching videos on Mercedes' website describing the production of the B-Class EVs and extolling their safety, reliability, features, and performance."); *id.* ¶ 64 ("Before purchasing his Class Vehicle, Mr. Ramdhanny researched the safety and reliability of the B-Class EV, including visiting Mercedes'

website [and] watching videos praising Mercedes Benz's high standards as a brand."); *id.* ¶¶ 71–72 ("Before purchasing his Class Vehicle, Mr. Waiss researched the safety and reliability of the B-Class EV, including visiting the Mercedes website.")).

These representations, however, cannot provide the basis for a fraud claim because they are mere puffery.  "Advertising that amounts to mere puffery is not actionable because no reasonable consumer relies on puffery.  The distinguishing characteristics of puffery are vague, highly subjective claims, as opposed to specific, detailed factual assertions."  *Glass*, 2011 WL 6887721, at *6 (internal quotation marks and citation omitted).  In this case, the Court finds that the alleged representations, which only generally promote the safety, quality, dependability, and reliability of the Class Vehicles, are non-actionable puffery and are insufficient to state a claim for fraud or negligent misrepresentation.  (Compl. ¶¶ 21–22, 33, 41, 52, 64, 71–72 & 135–36).  These statements "constitute merely vague and ill-defined opinions" and "are not assurances of fact and thus do not constitute misrepresentations for purposes of a fraud claim."  *Opheim,* 2021 WL 2621689, at *13 (finding that plaintiffs' allegations that defendants "promoted the 'high quality,' 'reliability,' 'superior performance,' and 'safety' of their vehicles" were mere puffery and insufficient to state a fraud claim); *Bullard v. Jaguar Land Rover Auto. PLC*, No. 20-14464, 2023 WL 4845873, at *14 (D.N.J. July 28, 2023) ("Seemingly vague statements about 'integrity,' 'performance,' 'safety,' or 'sustainability' do not cross this line—they are mere puffery and insufficient to state a claim for fraud or negligent misrepresentation."); *see also Tatum v. Chrysler Grp. LLC.*, No. 10-4269, 2011 WL 1253847, at *4 (D.N.J. Mar. 28, 2011) (noting that statements concerning "reliability and durability . . . may be based on multiple factors, not just one element of the car"); *Resnick v. Hyundai Motor Am., Inc.*, No. 16-0593, 2016 WL 9455016, at *9 (C.D. Cal. Nov. 14, 2016).  Indeed, such statements are routinely made by companies seeking to gain a

competitive advantage in their respective industries and are therefore not actionable.  *Glass*, 2011 WL 6887721, at *7 (finding that the alleged misrepresentations—"Rated 4 stars in recent crash tests.  MINI is ready to serve and protect" and "A powerful ally in the war against loss-of-control" —were examples of non-actionable puffery that are "routinely made by companies seeking to gain a competitive advantage").

Further, these alleged misrepresentations were directed at the Class Vehicles as a whole, rather than the alleged defect.  The advertising materials that allegedly promoted the safety, quality, dependability, and reliability of the Class Vehicles did not contain any disclosure concerning the Coolant Seal Defect specifically.  (*See, e.g.,* Compl. ¶¶ 21–22, 33, 41, 52, 64, 71– 72 & 135–36).  Because these general representations did not make "specific claims" as to the Coolant Seal Defect, Defendants' "general advertising was puffery as that is understood in the law."  *Tatum*, 2011 WL 1253847, at *4 ("Absent *specific claims as to the braking system,* Defendant's general advertising was puffery . . . ." (emphasis added)).  And, as already stated, "'[a]dvertising that amounts to 'mere' puffery is not actionable because no reasonable consumer relies on puffery.'"  *Ponzio*, 447 F. Supp. 3d at 234 (quoting *In re Toshiba Am. HD DVD Mktg. & Sales Practices Litig.*, 08-0939, 2009 WL 2940081, at *10 (D.N.J. 2009)); *see also Argabright v. Rheem Mfg. Co.*, 201 F. Supp. 3d 578, 608–09 (D.N.J. 2016) (dismissing consumer fraud claims based on similar representations concerning quality); *Rodio v. Smith*, 587 A.2d 621, 622, 624 (N.J. 1991) (the slogan "You're in good hands with Allstate" was "nothing more than puffery" and thus was not "a deception, false promise, misrepresentation, or any other unlawful practice within the ambit of the [NJCFA]."); *Edmundson v. Procter & Gamble Co.*, 537 F. App'x 708, 709 (9th Cir. 2013) (explaining that, under the CLRA and UCL, "[s]pecific, quantifiable 'statements of fact' that refer to a product's absolute characteristics may constitute false advertising, while general,

subjective, unverifiable claims are 'mere puffery' that cannot"); *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 976 (N.D. Cal. 2018) (stating that puffery is not actionable under CFAL); *Perret v. Wyndham Vacation Resorts, Inc.*, 889 F. Supp. 2d 1333, 1342 (S.D. Fla. 2012) (indicating that puffery is not actionable under FDUTPA); *Harrison v. Gen. Motors, LLC*, No. 21-12927, 2023 WL 348962, at *18 (E.D. Mich. Jan. 19, 2023) (noting that puffery is not actionable under state consumer protection statutes including GUDTPA); *Paws Holdings, LLC v. Daikin Applied Americas Inc.*, No. 116-058, 2018 WL 475013, at *5 (S.D. Ga. Jan. 18, 2018) ("puffery does not form the basis of a cause of action under the GFBPA"); *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 52 n.14 (S.D.N.Y. 2019) (noting that puffery is "not actionable under . . . New York's consumer protection statutes."); *Ahern v. Apple Inc.*, 411 F. Supp. 3d 541, 555 (N.D. Cal. 2019) (acknowledging that puffery is not actionable under OUTPA); *Kramer v. Hollmann*, No. 11-0136, 2012 WL 5869423, at *3 (Tex. App. Nov. 21, 2012) ("Misrepresentations are actionable under the [TU]DTPA so long as they are of a material fact and not merely puffing or opinion." (quotation marks omitted)).  Thus, to the extent that Plaintiffs' fraud claims are based on advertising materials that allegedly promoted the safety, quality, dependability, and reliability of the Class Vehicles (Compl. ¶¶ 21–22, 33, 41, 52, 64, 71–72 & 135–36), Plaintiffs have failed to allege facts that support plausible allegations of fraud by misrepresentation.

Even if these statements were not puffery, Plaintiffs have still failed to plead affirmative misrepresentations with the level of specificity required under Rule 9(b).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  Though Plaintiffs allege that Defendants "held out the Class Vehicles as having superior engineering and performance" and disseminated marketing materials that touted the quality, dependability, and safety of the Class Vehicles, they fail to allege

who specifically made the alleged misrepresentations, or what those specific statements were. (Compl. ¶¶ 21–22, 33, 41, 52, 64, 71–72 & 135–36).  As such, Plaintiffs have failed to "inject precision or some measure of substantiation into [their] fraud allegation[s]."  *Frederico*, 507 F.3d at 200; *Dimartino v. BMW of N. Am., LLC*, No. 15-8447, 2016 WL 4260788, at *7 (D.N.J. Aug. 11, 2016) (finding that plaintiff failed to plead affirmative misrepresentations in accordance with Rule 9(b) where the "[p]laintiff provide[d] no specifics as to who made the alleged misrepresentations (BMWNA or one of the second-parties), [or] what those statements were.").

Next, to support their claim that Defendants made fraudulent misrepresentations, Plaintiffs point to an allegation in their Complaint, which provides that "Mercedes also expressly marketed the importance of the cooling system for the EDUs but never disclosed the Coolant Seal Defect." (Compl. ¶ 137).  As an example, they reference a statement that appears to have been published by Mercedes on its website in 2014 and states as follows:

> The thermal management system of the B-Class Electric Drive encompasses on the one hand the air conditioning for the vehicle interior and on the other hand the cooling of the electric drive.  This ensures that all components perform to full efficiency even on long uphill slopes or in high outside temperatures.  The high-voltage battery is cooled via a low-temperature circuit.  At very high temperatures this can be boosted by the coolant circuit of the air-conditioning system.  For low temperatures, a battery heater is available.

(*Id.*).  This representation also cannot provide the basis for a fraud claim.  As an initial matter, it appears that this representation, which touts the efficiency of the cooling system in the Class Vehicles, also amounts to non-actionable puffery.  *Argabright*, 201 F. Supp. at 608 (finding statements that Rheem products are "routinely tested and certified" and "meet or exceed rigorous industry and regulatory standards for quality, reliability, [and] efficiency" were mere puffery); *Gamboa v. Ford Motor Company*, 381 F.Supp.3d 853, 875 (E.D. Mich. 2019) ("[P]romises of

efficiency and reliability 'cannot form the basis for a fraud claim.'").  In addition, Plaintiffs have also failed to plead affirmative misrepresentations with the level of specificity required under Rule 9(b).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  To that end, Plaintiffs cannot satisfy Rule 9(b)'s particularity requirement simply by referencing a representation made by Mercedes on its website, without providing any allegations as to what point—if ever—Plaintiffs were exposed to that statement.  *Glass*, 2011 WL 6887721, at *8; *Hughes*, 2011 WL 2976839, at *12 (holding that Plaintiff did "not allege the date, place, or time of this misrepresentation or otherwise inject . . . precision and some measure of substantiation into plaintiffs' allegations of fraud" by merely alleging that defendant made a misrepresentation in its advertising).  And here, other than generally alleging that Plaintiffs were exposed to Defendants' misrepresentations (Compl. ¶ 139), the Complaint does not allege at what point—if ever—any of the named Plaintiffs were exposed to the representation recounted above, which allegedly touts the efficiency of the cooling system for the EDUs.  (*Id.* ¶¶ 19–78).  Without any factual allegations providing such a level of specificity, Plaintiffs have not adequately pled affirmative misrepresentations based on Defendants' statement touting the importance and efficiency of the cooling system for the EDUs.  *See Glass*, 2011 WL 6887721, at *8; *Henderson v. Volvo Cars of N. Am., LLC*, No. 09-4146, 2010 WL 2925913, at *4 (D.N.J. July 21, 2010) (Rule 9(b)'s heightened pleading standard is not satisfied by only "broad assertions that [the d]efendant marketed its vehicles as being of superior quality" without "the context of the alleged statements[ ] and effect that any of the statements had on [the p]laintiffs").

Finally, to support their claim that Defendants made fraudulent misrepresentations, Plaintiffs point to an allegation in their Complaint which provides that:

> [b]ased on Mercedes' representations in the warranty and maintenance schedules for the Class Vehicles, the seal around the drive shaft is expected to last for the useful life of the EDU without the need for maintenance, repair or replacement.  Plaintiffs and owners of Class Vehicles were provided owner's manuals and maintenance schedules that say nothing about inspection or maintenance of the drive shaft seal.  Indeed, the drive shaft seal is omitted from the maintenance schedules entirely.

(Compl. ¶ 148).  However, Plaintiffs have again failed to allege who specifically made the alleged misrepresentations, or what those representations even were.  Rule 9(b)'s particularity requirement mandates more than a vague reference to unspecified representations made in warranty and maintenance schedules.  Plaintiffs cannot simply reference such vague statements without providing the date when the statement was made, what those statements were, or at what point Plaintiffs were exposed to those statements.  As such, Plaintiffs have failed to allege facts that support plausible allegations of fraud by misrepresentations.  *See, e.g.*, *Hughes*, 2011 WL 2976839, at *13.

As Plaintiffs fail to allege any specific false statement, Plaintiffs fail to plead sufficient facts to plausibly allege actionable misrepresentations.  The Court therefore grants Defendants' motion to dismiss Plaintiffs' statutory and common law fraud claims to the extent they are based on misrepresentations.[7]

### ii.        Omissions and Concealment

Plaintiffs' common law and statutory fraud claims are also premised upon an alleged failure by Defendants to disclose to them the Coolant Seal Defect.  To support these claims, Plaintiffs allege that they each relied on Defendants' omissions and concealment of material facts regarding the Coolant Seal Defect.  (*See, e.g.*, Compl. ¶¶ 24, 35, 46, 54, 66, 74, 101 & 214).  Defendants

---

[7]        Because the Court will also dismiss all omission and concealment based fraud claims in the next section, which will consequently dismiss all types of Plaintiffs' fraud claims, the Court omits the counts at this time.

contend that these fraud-based claims cannot proceed as pled because Plaintiffs have failed to adequately plead that Defendants knew of the Coolant Seal Defect at the time Plaintiffs purchased or leased the Class Vehicles.  (Mov. Br. at 33–36).  Plaintiffs do not dispute that they must plead pre-sale knowledge.  (*See* Opp. Br. at 35–37).  Rather, Plaintiffs contend that pre-sale knowledge can be inferred from (i) fundamental quality controls and pre-production testing, (ii) consumer complaints made to the NHTSA, (iii) warranty claims data; and (iv) a statement made in Tesla's 10-K filing.  (*Id.* at 36–37).  For the following reasons, the Court agrees with Defendants and finds that the Plaintiffs have failed to adequately plead that Defendants knew of the Coolant Seal Defect.  As such, their fraud-based claims must be dismissed to the extent that they are premised on a theory of omission or concealment.

Rule 9(b) provides that "knowledge . . . may be alleged generally."  Fed. R. Civ. P. 9(b).[8] Nevertheless, the Supreme Court has explained that while "Rule 9 merely excuses a party from pleading discriminatory intent under an elevated pleading standard" it "does not give him license to evade the less rigid—though still operative—strictures of Rule 8."  *Iqbal*, 556 U.S. at 686–87 (citation omitted).  "While knowledge elements of fraud claims may be alleged generally, the term 'generally' 'is to be compared to the particularity requirement applicable to fraud or mistake,' and 'does not empower [a plaintiff] to plead the bare elements of his cause of action, affix the label 'general allegation,' and expect his complaint to survive a motion to dismiss.'"  *Diaz*, 2022 WL 4016744, at *26 (quoting *Iqbal*, 556 U.S. at 686–87).  As such, the Court will disregard "'legal

---

[8]    In their Opposition Brief, Plaintiffs contend that Defendants apply the incorrect standard to allegations of knowledge because Rule 9(b) expressly provides that knowledge may be alleged generally.  (Opp. Br. at 36).  In Reply, Defendants do not contest that under Rule 9(b) knowledge may be alleged generally.  (*See generally* Reply).  And in fact, other Courts that have evaluated whether a plaintiff has adequately pled pre-sale knowledge have noted that knowledge may be averred generally under Rule 9(b).  *Diaz*, 2022 WL 4016744, at *26; *Maugain v. FCA US LLC*, No. 22-116, 2023 WL 1796113, at *8 (D. Del. Feb. 7, 2023).

conclusions . . . supported by mere conclusory statements.'" *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022) (quoting *Davis*, 824 F.3d at 341).

As recounted above, Plaintiffs allege that the Coolant Seal Defect causes the electric motors in B-Class EVs to degrade and abruptly fail, leaving the vehicle inoperable. (Compl. ¶ 1). As such, Plaintiffs must plead facts sufficient to support a plausible inference that Defendants knew of the Coolant Seal Defect before the Named Plaintiffs made their alleged purchases or leases, which occurred as early as 2014. (*Id.* ¶¶ 20–21, 32, 40, 51, 63 & 71). Plaintiffs assert the following categories of evidence of Defendants' knowledge: (i) fundamental quality controls and pre-production testing, (ii) consumer complaints made to the NHTSA, (iii) warranty claims data; and (iv) a statement made in Tesla's 10-K filing. (Opp. Br. at 36–37). While the Court reviews each category in turn, "the [] complaint must be read as a whole, and its averments and the inferences reasonably drawn from those averments must be viewed in the light most favorable to the plaintiff." *Est. of Lagano v. Bergen Cnty. Prosecutor's Off.*, 769 F.3d 850, 855 (3d Cir. 2014).

First, Plaintiffs contend that pre-sale knowledge can be inferred from fundamental quality controls and pre-production testing. (Opp. Br. at 36). Specifically, Plaintiffs allege that "Mercedes knew of the Coolant Seal Defect . . . because Mercedes had collaborated with Tesla on its electric motor technologies, including the EDU, since as early as 2007." (Compl. ¶ 8; *see also id.* ¶¶ 6 & 107). As such, Plaintiffs allege that they "expect that discovery will reveal that Mercedes learned of the Coolant Seal Defect alongside Tesla during its development of the EDU technology with Tesla." (*Id.* ¶ 127). They also allege that "[u]se of the same EDU by other manufacturers in their vehicles as early as 2012, including Toyota's RAV4 EV and Tesla's Model S vehicles, exposed the Defect to Mercedes long before the first Class Vehicle was sold." (*Id.*). Further, Plaintiffs allege that "[t]o the extent Mercedes was somehow ignorant of the Coolant Seal Defect during its

technical collaborations with Tesla, Mercedes would have learned about the Coolant Seal Defect during its own pre-production development and quality assurance testing of the Class Vehicles, which would have exposed the Class Vehicles and their engine, the EDU, to routine durability, accelerated life and other testing that would have exposed the Coolant Seal Defect." (*Id.* ¶ 128).

None of these allegations, however, explain how the collaboration with Tesla, or the tests Mercedes conducted on Class Vehicles, revealed the Coolant Seal Defect such that Defendants could be said to have known about its existence prior to the sale or lease of the Class Vehicles. Rather, Plaintiffs only offer general statements that they "*expect* that discovery will reveal that Mercedes learned of the Coolant Seal Defect alongside Tesla" and that it is likely that "Mercedes *would* have learned about the Coolant Seal Defect during its own pre-production development and quality assurance testing of the Class Vehicles." (*Id.* ¶¶ 127–28 (emphasis added)). Plaintiffs cannot establish pre-sale knowledge based on collaboration and testing where they have alleged no facts to support the inference that the collaboration and testing necessarily revealed the defect. Plaintiffs must allege more than an undetailed assertion that the testing *must* have revealed the alleged defect. *See, e.g.*, *Diaz*, 2022 WL 4016744, at *31 (finding that plaintiffs failed to adequately allege pre-sale knowledge based on pre-sale testing data to support fraud claims under the CLRA, FDUTPA and NYGBL, where the complaint failed to explain how the tests defendant conducted on class vehicles would have revealed the differential defect); *Maugain*, 2023 WL 1796113, at *10 (finding that plaintiffs failed to adequately allege pre-sale knowledge based on pre-sale testing data to support common law and statutory consumer fraud claims where complaint only generally alleged that defendant would have been made aware of problems because vehicles underwent quality control testing); *McMahon*, 2023 WL 4045156, at *12 (finding that plaintiffs failed to adequately allege pre-sale knowledge based on pre-sale testing data to support common

law and statutory consumer fraud claims under California, New Jersey, New York, Georgia, Oregon, and Texas law where plaintiffs only alleged that it was standard practice for auto manufacturers to engage in extensive pre-launch testing of its vehicles); *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) (holding that "[t]he allegation that HP, as the manufacturer, had 'access to the aggregate information and data regarding the risk of overheating' is speculative and does not suggest how any tests or information could have alerted HP to the defect").  Further, though Plaintiffs allege that "[u]se of the same EDU by other manufacturers in their vehicles as early as 2012, including Toyota's RAV4 EV and Tesla's Model S vehicles, exposed the Defect to Mercedes long before the first Class Vehicle was sold" (Compl ¶ 127), they allege no facts indicating that the EDUs in those vehicles were failing, that Defendants had access to information indicating that those EDUs were failing, or that it was well known that those EDUs were failing, such that Defendants could be said to have known about the Coolant Seal Defect prior to sale or lease of the Class Vehicles, or any time thereafter.[9]  As such, to the extent Plaintiffs allege that Defendants had pre-sale knowledge of the Coolant Seal Defect via their collaboration with Tesla or somewhere in their data gathered from pre-production testing, such allegations are the type of "'conclusory statements'" that the Court must ignore.  *Princeton Univ.*, 30 F.4th at 342 (quoting *Davis*, 824 F.3d at 341).

Second, Plaintiffs contend that pre-sale knowledge can be inferred from consumer complaints, including those made to the NHTSA.[10]  (Opp. Br. at 36).  More specifically, the Complaint alleges that reports made to the NHTSA by consumers who have experienced the

---

[9]     Plaintiffs' citation to one consumer complaint that alleges that Toyota recalled their electric drive units for the Rav4 (Compl ¶ 122), is not sufficient for the Court to infer that Defendants knew of the Coolant Seal Defect. *McMahon*, 2023 WL 4045156, at *13 (finding that even 30 complaints was not an unusually high number of complaints that could indicate that the defendants knew of the alleged defect).

[10]    Though Plaintiffs state that complaints about the Coolant Seal Defect were made on other public fora (Compl ¶ 122), they do not describe what complaints were made on those fora or provide any examples of such complaints.

Coolant Seal Defect indicate that the "Class Vehicles will suddenly fail as a result of the Defect, often putting occupants in imminent danger." (Compl. ¶ 122). Plaintiffs submit a sample of five complaints made by consumers to the NHTSA, which describe how the leaking of coolant into the electric drive unit of their vehicles resulted in failure of the vehicles. (*See e.g.*, *id.* ("The main electric drive motor will start leaking coolant which then damages the motor and even electronics."); *id.* ("Coolant leaked into drive unit causing total failure. This is a known issue and should be subject to a recall of these cars."); *id.* ("Vehicle stopped suddenly and would not restart . . . Drive unit failed due to faulty design where coolant contaminated the electric motor"). Plaintiffs allege that because "Mercedes regularly monitors consumer complaints to NHTSA about its vehicles" such complaints provided Defendants with knowledge of the Coolant Seal Defect. (*Id.* ¶ 131). However, as Defendants point out (Mov. Br. at 34), Plaintiffs provide no allegations indicating when any of these consumer complaints were allegedly submitted to the NHTSA. (*See, e.g.*, *id.* ¶ 122). Without additional allegations indicating when these complaints were submitted, the Court cannot infer that those complaints revealed the Coolant Seal Defect such that Defendants could be said to have known about the existence of the defect *prior* to the sale or lease of the Class Vehicles. This is particularly true given that courts routinely decline to give post-sale complaints any weight, since they logically could not provide pre-sale knowledge. *McMahon*, 2023 WL 4045156, at *12; *Cho v. Hyundai Motor Co.*, 636 F. Supp. 1149, 1168 (C.D. Cal. Oct. 21, 2022). Regardless, given the undoubtedly large quantity of vehicles sold by Defendants (Compl. ¶ 178), even five consumer complaints are not an "unusually high number of complaints" that would allow the Court to infer that Defendants knew of the Coolant Seal Defect. *McMahon*, 2023 WL 4045156, at *13 (finding that 30 complaints was not an unusually high number of complaints that could indicate that the defendants knew of the alleged defect); *McQueen v. BMW of N. Am.*, No. 12-

6674, 2014 WL 656619, at *4 (D.N.J. Feb. 20, 2014) (finding that the plaintiff failed to adequately allege that BMW had knowledge of the alleged defect based on "less than ten complaints" about "failures" in similar model vehicles); *Diaz v. FCA US LLC*, No. 21-0906, 2023 WL 6160560, at *6 (D. Del. Sept. 21, 2023) ("[T]he [c]ourt finds that [p]laintiffs do not point to an unusual number of complaints within the span of nearly eight years relating to the alleged Differential Defect, so they are insufficient to plausibly plead FCA's pre-sale knowledge."); *Cho*, 2022 WL 16966537, at *10 ("Forty-five, or even fifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints."); *Berry v. FCA US, LLC*, No. 19-0023, 2022 WL 18671067, at *5 (S.D. Tex. Mar. 25, 2022) (Acknowledging that generally "complaints by themselves do not establish a manufacturer's knowledge.").  As such, the Court cannot infer that Defendants had knowledge of the Coolant Seal Defect from these complaints.

Third, Plaintiffs contend that pre-sale knowledge can be inferred from warranty claims data.  (Opp. Br. at 36).  More specifically, they allege that Mercedes knew about the Coolant Seal Defect because "Mercedes also collects, reviews, and analyses data regarding all vehicle repairs made under warranty at its dealerships and service centers" and "Mercedes would have received its own reports from consumers and its dealerships[] about the Coolant Seal Defect."  (Compl. ¶¶ 132–33; *see also id.* ¶ 149 ("Mercedes' internal warranty data will demonstrate its knowledge of the frequency and distribution of the Defect's manifestation.")).  Again, Plaintiffs provide no allegations indicating when Defendants actually received any of these warranty claims or reports from consumers and their dealerships about the Coolant Seal Defect.  (*See, e.g.*, *id.* ¶¶ 122, 132–33 & 149).  Nor do they allege any facts explaining what the warranty or repair data purportedly show, much less facts showing that Defendants knew based on this data that the Class Vehicles contained the Coolant Seal Defect.  (*See id.*).  Plaintiffs again only offer general statements that

they expect that potential data Defendants received from their own reports from consumers and dealerships revealed that the Class Vehicles contained the Coolant Seal Defect.  (*Id.* ¶¶ 129–33).  However, to the extent Plaintiffs allege that Defendants had knowledge of the defect or that they may have found evidence of the alleged defect somewhere in their data from warranty claims and reports, such allegations are the type of "conclusory statements" that the Court must ignore. *Maugain*, 2023 WL 1796113, at *10 (finding that general allegations that defendants collected warranty data from dealerships was insufficient to establish pre-sale knowledge).

Fourth, Plaintiffs contend that pre-sale knowledge can be inferred from a statement made in Tesla's 10-K filing.  (Opp. Br. at 37).  More specifically, Plaintiffs allege that in its 10-K filed with the Securities and Exchange Commission ("SEC") for the year ending December 31, 2014, Tesla admitted that the EDU technology it had developed with MBG was defective by stating: "[o]ur vehicles or vehicles that contain our powertrains such as the . . . Mercedes-Benz B-Class EV may contain defects in design and manufacture that may cause them not to perform as expected or that may require repair," thereby putting Defendants on notice of the alleged defect.  (Compl. ¶ 7).  However, as Defendants point out (Mov. Br. at 33 n.13), in this statement, Tesla did not admit that the EDUs in the B-Class Vehicles were *actually* defective.  They were merely speculating that some of those vehicles "*may* contain defects" or "*may* require repair."  (Compl. ¶ 7 (emphasis added)).  The Court cannot plausibly infer that Defendants had knowledge of the Coolant Seal Defect based on such speculative statements made by Tesla.

Plaintiffs have not otherwise alleged any facts plausibly indicating that Defendants knowingly concealed facts regarding the Coolant Seal Defect.  Plaintiffs only generally allege that Defendants "actively concealed[] the presence of the Coolant Seal Defect in the Class Vehicles." (Compl. ¶¶ 13–14 & 146).  However, they do not point to any facts, separate from those discussed

above, indicating that Defendants had knowledge of the defect.  Without such additional allegations, the Court cannot infer that the Defendants actively concealed any defect.  *Diaz*, 2022 WL 4016744, at \*31 (finding that plaintiffs could not maintain a theory of concealment where the plaintiffs did not point to any facts showing that the defendants had knowledge of the defect at any time).  In sum, Plaintiffs' allegations fail to support a plausible inference that Defendants had knowledge of the Coolant Seal Defect that Plaintiffs describe in their Complaint either at the time of sale or lease of any of the Plaintiffs' Class Vehicles or any time thereafter.  As such, the Court must dismiss all of Plaintiffs' fraud claims based on a fraudulent omission or concealment.[11]

Thus, because Plaintiffs' statutory and common law fraud claims are based on either affirmative misrepresentations or fraudulent omissions and concealment, and because Plaintiffs have failed to adequately plead those elements, the Court will dismiss all of Plaintiffs' statutory

---

[11]    To support their claim that Defendants violated the NJCFA, Plaintiffs allege that Defendants "employed unconscionable commercial practices by selling Class Vehicles that contained the Coolant Seal Defect."  (Compl. ¶ 219).  Defendants contend that Plaintiffs have failed to adequately allege any unconscionable commercial practices.  (Mov. Br. at 29).  The Court agrees with Defendants.  Here, Plaintiffs contend that Defendants employed unconscionable commercial practices, because "[i]t is unconscionable to *knowingly* distribute or sell vehicles with an undisclosed safety risk and to continue ignoring such risks" and because "Defendants *knew* that the Coolant Seal Defect would typically manifest after the expiration of the warranty . . . thereby unlawfully transferring the costs of repair and/or replacement of the EDU to Plaintiffs and Class Members."  (Compl. ¶¶ 220 & 223 (emphasis added)).  However, as described above, Plaintiffs have failed to allege facts showing that Defendants had knowledge of the Coolant Seal Defect.  And Plaintiffs' allegations that Defendants "employed unconscionable commercial practices by selling Class Vehicles that contained the Coolant Seal Defect" are legal conclusions that are insufficient to state a claim.  *See Glass*, 2011 WL 6887721, at \*8.

and common law fraud claims, including Counts 2,[12] 3, 4, 5, 6, 7, 8, 11, 14, 15, 20, 23 and 26.[13]

### F.   Express Warranty Claims (Counts 9, 12, 16, 18, 21, 24 and 27)

Plaintiffs bring Counts 9, 12, 16, 18, 21, 24 and 27 for breach of express warranty under the relevant laws of California, Florida, Georgia, New Jersey, New York, Oregon, and Texas. These claims include violations of: (i) the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* (Count 9); (ii) Fla. Stat. §§ 672.313 and 680.21 (Count 12); (iii) Ga. Code Ann. §§ 11-2-313 and 11-2A-210 (Count 16); (iv) N.J.S. 12A:2-313 and 2A-210 (Count 18); (v) N.Y. U.C.C. Law §§ 2-313, 2A-103, and 2A-210 (Count 21); (vi) Or. Rev. Stat. §§ 72.3130, 72A.1030, and 72A.2100 (Count 24); and (vii) Tex. Bus. & Com. Code §§ 2.313 and 2A.210 (Count 27).[14] (Compl. ¶¶ 278–95, 323–36, 374–84, 394–405, 429–45, 479–97 & 523–38).

Defendants move to dismiss Plaintiffs' express warranty claims because they contend that no Plaintiff has alleged any facts showing a breach of the express warranty. (Mov. Br. at 18). To start, they contend that Plaintiffs Liou, Jones, Clifford, Ramdhanny, and Waiss have failed to state a claim for breach of express warranty because those Plaintiffs do not allege that they experienced any defect in their Class Vehicles or sought any repairs during the terms of the warranty period.

---

[12]     Defendants contend that Plaintiffs' claim for negligent misrepresentation under Count 2 must also be dismissed under the economic loss doctrine, which prohibits plaintiffs from recovering in tort economic losses to which they are entitled only by contract. (Mov. Br. at 41). In Opposition, Plaintiffs contend that the economic loss doctrine does not bar their negligent misrepresentation claim because that claim is based in Defendants' fraud, which consists of misrepresentations and omissions. (Opp. Br. at 44). In Reply, Defendants contend that Plaintiffs should not be allowed to restyle their negligent misrepresentation claims as fraud claims, but nevertheless state that even if the Court were inclined to provide Plaintiffs with some latitude in this regard, the claim must be dismissed because the Complaint does not identify a specific statement or omission regarding the alleged defect with the EDU. (Reply at 14). Even if Plaintiffs' negligent misrepresentation claim (Count 2) is based on Defendants' misrepresentations and omissions as Plaintiffs assert, the Court finds that this claim cannot proceed, because, as Defendants assert, the Complaint does not identify a specific statement or omission regarding the alleged defect with the EDU.

[13]     The Court will not address Defendants' remaining arguments for dismissing these claims. (Mov. Br. at 25–26, 30–32, 37–42).

[14]     As discussed, the Court will not engage in a choice of law analysis at this juncture. As such, the Court will apply general principles that cut across different states' laws, and will otherwise apply the laws as alleged by the Complaint. *McCoy*, 2023 WL 6140641, at *3; *McMahon*, 2023 WL 4045156, at *15 n.18.

(*Id.* at 18–19).  Further, they allege that Plaintiff Snowdy has failed to state a claim for breach of express warranty because, even though Snowdy alleges that Mercedes replaced his Class Vehicles under warranty, there can be no breach of the warranty unless Defendants have refused to repair the vehicle.  (*Id.* at 18).  The Court considers Defendants' arguments in turn.

### i.  Plaintiffs Liou, Jones, Clifford, Ramdhanny, and Waiss

Plaintiffs Liou, Jones, Clifford, Ramdhanny, and Waiss bring claims for breach of express warranty under California (Liou), Florida (Jones), Georgia (Clifford), Texas (Ramdhanny), and Oregon (Waiss) law in Counts 9, 12, 16, 24, and 27.  As discussed, Defendants contend that Plaintiffs Liou, Jones, Clifford, Ramdhanny, and Waiss have failed to state a claim for breach of express warranty because those Plaintiffs do not allege that they experienced any defect in their Class Vehicles or sought any repairs during the terms of the warranty period.  (*Id.*).  Rather, Defendants point out that these Plaintiffs' alleged repairs occurred after the terms of the express warranty already expired.  (*Id.*).  As such, Defendants argue that no claim can lie for repairs to, or failures of, the EDUs in the Class Vehicles beyond the express warranty period.  (*Id.*).  Plaintiffs do not contest that Liou, Jones, Clifford, Ramdhanny, and Waiss experienced defects in their Class Vehicles after the terms of the warranty period had already expired.  (*See* Opp. Br. at 18–20).  Nevertheless, Plaintiffs argue that they can still maintain claims for breach of express warranty even though the defects of certain named Plaintiffs manifested outside the period covered by the warranty because they have alleged facts showing that the terms of the warranty are unconscionable.  (*Id.*).  Defendants maintain that both the time and mileage terms of the express warranty were not unconscionable.  (Mov. Br. at 21–22; Reply at 6–7).  For the reasons set forth below, the Court finds that Plaintiffs Liou, Jones, Clifford, Ramdhanny, and Waiss have failed to state a claim for breach of express warranty under Counts 9, 12, 16, 24, and 27.

"A manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty." *Cipollone v. Liggett Grp., Inc.*, 505 U.S. 504, 525 (1992).  As a general rule, "an express warranty does not cover repairs made after the applicable time . . . ha[s] elapsed." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 616 (3d Cir. 1995) (quoting *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 250 (2d Cir. 1986)); *see also Sauer v. Subaru of Am., Inc.*, No. 18-14933, 2020 WL 1527779, at *7 (D.N.J. Mar. 31, 2020) ("[W]here '[p]laintiffs have not alleged any facts that the vehicle had problems or any covered systems failed within the express warranty period,' they have failed to state a plausible claim for breach of the express warranty under the Song–Beverly Act."); *Skeen v. BMW of N. Am., LLC*, 13-1531, 2014 WL 283628, at *12 (D.N.J. Jan. 24, 2014) (noting that express warranties do not typically cover repairs made after the applicable time has elapsed when evaluating express warranty claims under New Jersey and Georgia law); *Sarkisian v. Newmar Indus., Inc.*, No. 21-1123, 2023 WL 5206953, at *2 (D. Or. Aug. 14, 2023) ("Courts in this District have held that express warranties only cover repairs made during the applicable period written in the warranty."); *Riley v. Gen. Motors, LLC*, 664 F. Supp. 3d 1336, 1345 (M.D. Fla. 2023); *Norman v. FCA US, LLC*, No. 22-11393, 2023 WL 6388926, at *8–9 (E.D. Mich. Sept. 30, 2023).  That rule applies regardless of whether the defect existed prior to the expiration of the warranty.  *Duquesne Light Co.*, 66 F.3d at 616.

Nevertheless, "[w]here the alleged breach regards a latent defect that manifests outside the period covered by the warranty, a plaintiff may sometimes state a claim if he alleges that the warranty was unconscionable." *Skeen*, 2014 WL 283628, at *12; *McCabe v. Daimler AG*, 948 F. Supp. 2d. 1347, 1358 (N.D. Ga. 2013) (accepting the "general proposition" that "courts have used the unconscionability provision of the Georgia Commercial Code, O.C.G.A. § 11–2–302, to strike unconscionable warranty limitations"); *Seifi v. Mercedes-Benz USA, LLC*, No. 12-5493, 2013 WL

2285339, at *4 (N.D. Cal. 2013); *Riley*, 664 F. Supp. 3d at 1345; *Duncan v. Nissan N. Am., Inc.*, 305 F. Supp. 3d 311, 318 (D. Mass. 2018) (analyzing unconscionability under Texas and Oregon law).  "[B]oth procedural and substantive unconscionability must be present for the contract to be declared unenforceable."[15] *Lessin v. Ford Motor Co.*, No. 19-1082, 2020 WL 6544705, at *5 (S.D. Cal. Nov. 6, 2020) (citations omitted) (analyzing unconscionability under California, Florida, and Texas law); *Skeen*, 2014 WL 283628, at *13 (analyzing unconscionability under New Jersey and Georgia law); *Duncan*, 305 F. Supp. 3d at 318–19 (analyzing unconscionability under Texas and Oregon law); *Aron v. U–Haul Co. of Cal.*, 143 Cal. App. 4th 796, 808 (2006); *Ski River Dev., Inc. v. McCalla*, 167 S.W.3d 121, 136 (Tex. App. 2005).  Courts will typically find a contract term to be substantively unconscionable if the term is "excessively disproportionate," involving an "exchange of obligations so one-sided as to shock the court's conscience."  *Delta Funding Corp. v. Harris*, 912 A.2d 104, 120 (2006) (Zazzali, J., concurring in part and dissenting in part) (quoting *Sitogum Holdings, Inc. v. Ropes*, 800 A.2d 915, 921 (N.J. Super. Ct. Ch. Div. 2002)).  Procedural unconscionability focuses on the circumstances of the negotiation that produced the contested term.  *See, e.g.*, *Delta Funding Corp.*, 912 A.2d at 120 (Zazzali, J., concurring and dissenting) (citing *Sitogum Holdings*, 800 A.2d at 921) (listing "inadequacies" such as age, literacy and "lack of sophistication").  Procedural unconscionability will typically exist when a contract reflects "an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice."  *Seifi*, 2013 WL 2285339, at *4 (quoting *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982)); *Delta Funding Corp.*, 912 A.2d at 120.

---

[15]    The elements of unconscionability under the laws of California, Georgia, Florida, Oregon, and Texas are essentially the same as those under New Jersey law.  *Lessin v. Ford Motor Co.*, No. 19-1082, 2020 WL 6544705, at *5 (S.D. Cal. Nov. 6, 2020); *Skeen*, 2014 WL 283628, at *13; *Duncan*, 305 F. Supp. 3d at 318–19.  And neither of the parties suggest that the elements of unconscionability under the laws of these states vary.  (*See generally* Mov. Br. & Opp. Br.).  As such, when discussing unconscionability, the Court will cite cases analyzing unconscionability under the laws of these different states interchangeably.

Plaintiffs allege that the Class Vehicles were covered by a warranty which furnishes coverage for 48 months or 50,000 miles, whichever occurs first.  (Compl. ¶ 144; *see also* D.E. Nos. 21-3–21-5, Exs. 1, 2 & 3 to Mov. Br. (providing copies of New Vehicle Limited Warranty ("NVLW") applicable to Plaintiffs' Class Vehicles)).[16]  Nevertheless, Plaintiffs Liou, Jones, Clifford, Ramdhanny, and Waiss do not allege that they experienced any defect in their Class Vehicles or sought any repairs of their Class Vehicles during the warranty period.  Rather, as Defendants point out (Mov. Br. at 18), their alleged defects and repairs—to the extent they were sought—occurred after the terms of the warranty already expired.  (Compl. ¶¶ 32–36, 40–45, 51–55, 63–66, 71–75 & 147).  And Plaintiffs do not contest that Liou, Jones, Clifford, Ramdhanny, and Waiss experienced defects in their Class Vehicles after the terms of the warranty period had already expired.  (*See* Opp. Br. at 18–20).  Because "an express warranty does not cover repairs made after the applicable time . . . ha[s] elapsed" Plaintiffs Liou, Jones, Clifford, Ramdhanny, and Waiss cannot sustain their claims for breach of express warranty unless they can allege that the terms of the warranty were unconscionable.  *See Duquesne Light Co.*, 66 F.3d at 616.  This they have failed to do.

Plaintiffs contend that that they have adequately pled procedural unconscionability of the express warranty terms because they have alleged that "Plaintiffs and Class Members could not negotiate these take-it-or-leave-it time and mileage limitations, the terms of which unreasonably favored Mercedes given that the EDUs are subject to repeated failures because of the Coolant Seal Defect."  (Compl. ¶ 150).  They allege that procedural unconscionability is further supported by

---

[16]     The Court may consider the New Vehicle Limited Warranties that are attached to Defendants' motion to dismiss because those documents are explicitly relied upon and integral to the Complaint.  (*See* Compl. ¶ 144 (discussing terms of express warranties)); *Buck*, 452 F.3d at 260 ("In evaluating a motion to dismiss, we may consider documents that are attached to or submitted with the complaint and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, and items appearing in the record of the case." (cleaned up)).

the fact that "[t]here is a clear disparity in bargaining power of the parties, the purchasers' lack of knowledge that Class Vehicles were defective, and the inability of Class Vehicle purchasers to bargain with Mercedes to increase coverage of the warranties, their lack of knowledge, their lack of meaningful alternatives, and disparity in sophistication of the parties." (*Id.* ¶ 149). Further, Plaintiffs argue that they have clearly alleged substantive unconscionability because they have set forth facts indicating that Defendants "knew the EDU would systematically fail, even after full replacement (albeit [] with a reconditioned EDU containing the same Coolant Seal Defect); and [] manipulated the warranty terms to avoid subsequent necessary repairs." (*Id.*). They contend that "[i]t is not the duration and mileage limits of Defendant's express warranty that are themselves unconscionable. Rather it is Defendant's *knowing* exploitation of the warranty limits that renders them unconscionable." (Opp. Br. at 20 (emphasis added)). Defendants contend that Plaintiffs have failed to allege any facts showing procedural or substantive unconscionability because it is not sufficient to merely allege that a manufacturer knew a part would fail after the expiration of a warranty period to show unconscionability. (Reply at 6). And they contend that Plaintiffs have set forth no facts to show that the Defendants intentionally manipulated the terms of the warranty, nor could they, when Plaintiffs' allegations that Defendants knew of the defect are insufficiently pled. (*Id.* at 6–7). The Court agrees with the Defendants.

Generally, "a manufacturer's knowledge that a part may ultimately fail does not, alone, make a time/mileage limitation unconscionable." *Ponzio*, 447 F. Supp. 3d at 256 (quoting *Merkin v. Honda N. Am., Inc.*, No. 17-3625, 2017 WL 5309623, at *5 (D.N.J. Nov. 13, 2017)); *Abraham*, 795 F.2d at 250 ("A rule that would make failure of a part actionable based on such 'knowledge' [i.e., of time to failure for car parts] would render meaningless time/mileage limitations in warranty coverage."); *Seifi*, 2013 WL 2285339, at *4 (rejecting argument "that the time/mileage limit in

[defendant's] warranty is unconscionable when invoked to deny a claim based on the latent defect in the engine gears," which plaintiffs alleged "was known" to the defendant "at the time their vehicles were sold and delivered"); *Licul v. Volkswagen Grp. of Am., Inc.*, No. 13-61686, 2013 WL 6328734, at *3 (S.D. Fla. Dec. 5, 2013) ("[U]nconscionability of an express warranty requires more than a defendant's mere knowledge of a defect at the time of sale."); *McCabe*, 948 F. Supp. 2d at 1358–59; *Lessin*, 2020 WL 6544705, at *5.  Typically, a plaintiff must plead additional facts to demonstrate unconscionability.  *See, e.g.*, *Skeen*, 2014 WL 283628, at *14–15 (concluding that allegations that manufacturer knew engine component would fail, manipulated the warranty terms to avoid paying for repair, and unfairly took advantage of its disparate bargaining power were sufficient to allege unconscionability).  As discussed, here Plaintiffs contend that they have adequately pled substantive unconscionability because Defendants "knew the EDU would systematically fail, even after full replacement (albeit [] with a reconditioned EDU containing the same Coolant Seal Defect); and [] manipulated the warranty terms to avoid subsequent necessary repairs."  (Compl. ¶ 149).  However, as already described above in Section III(E), Plaintiffs have failed to set forth any facts plausibly indicating that Defendants had knowledge of the Coolant Seal Defect.  Without such allegations, the Court cannot draw the inference that Defendants knowingly manipulated the terms of the warranty to avoid subsequent necessary repairs.  As such, because Plaintiffs fail to adequately plead that Defendants knew of the purported Coolant Seal Defect at the time that any of the named Plaintiffs purchased or leased their vehicles, or any time thereafter, Plaintiffs' unconscionability arguments fail.  *See Wesley v. Samsung Elecs. Am., Inc.*, No. 20-18629, 2021 WL 5771738, at *6–7 (D.N.J. Dec. 3, 2021) (finding that where the plaintiffs failed to adequately plead that the defendant knew of the purported defect at the time of sale, plaintiffs could not plausibly allege unconscionability); *Maugain*, 2023 WL 1796113, at *16 n.8.

Accordingly because Plaintiffs Liou, Jones, Clifford, Ramdhanny, and Waiss have not alleged that they experienced any defect in their Class Vehicles or sought any repairs of their Class Vehicles during the terms of the warranty period and have not plausibly alleged that the terms of the express warranties are unconscionable, their claims for breach of express warranty (Counts 9, 12, 16, 24 and 27) must be dismissed.

### ii.    Plaintiff Snowdy

Plaintiff Snowdy brings claims for breach of express warranty under New Jersey (Count 18) and New York law (Count 21).  Defendants acknowledge that Snowdy replaced both of his cars' EDUs under warranty in 2017.  (Mov. Br. at 18 (citing Compl. ¶ 25)).  Nevertheless, Defendants contend that Snowdy cannot allege a claim for breach of the express warranty because it is only "the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy which would constitute a breach of warranty."  (*Id.*).  In Opposition, Plaintiffs contend that Snowdy can properly assert a claim for breach of express warranty because the replacement EDU's in Snowdy's Class Vehicles were similarly defective and failed for a second time.  (Opp. Br. at 17 n.15 (citing Compl. ¶¶ 26–28)).  As such, they contend that the express warranty failed in its remedial purpose.  (*Id.*).  For the reasons set forth below, the Court finds that Plaintiff Snowdy has failed to state a claim for breach of express warranty under Counts 18 and 21.

As discussed, "[a] manufacturer's liability for breach of an express warranty derives from, and is measured by, the terms of that warranty."  *Cipollone*, 505 U.S. at 525.  In New Jersey, parties to a contract may establish an exclusive remedy for breach, so long as it is "expressly agreed to."  N.J.S.A. § 12A:2–719(1)(b).  Likewise, under New York law, warranties may limit damages recoverable "to return of the goods and repayment of the price or to repair and replacement of non-confirming goods or parts."  N.Y. U.C.C. § 2-719.  But even when parties expressly agree to an

exclusive remedy provision, "[w]here circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy [is available under the U.C.C.]."  N.J.S.A. 12A:2–719(2); *see also* N.Y. U.C.C § 2-719(2) ("Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this Act.").  Generally, courts have found that a warranty has failed its essential purpose where the defendant (i) is given the opportunity to repair the defect but refuses to repair the defect under warranty or unreasonably delays in effectuating a repair or (ii) repeatedly attempts repairs and is unsuccessful.  *Cox v. Chrysler Grp., LLC*, No. 14-7573, 2015 WL 5771400, at *7 (D.N.J. Sept. 30, 2015); *Rothschild v. Gen. Motors LLC*, No. 19-5240, 2020 WL 13581659, at *9 (E.D.N.Y. Sept. 30, 2020); *Feliciano v. Gen. Motors LLC*, No. 14-6374, 2016 WL 9344120, at *6 (S.D.N.Y. Mar. 31, 2016).  Here, Plaintiffs do not contend that Defendants refused to repair the defects in Snowdy's Class Vehicles or unreasonably delayed in effectuating the repairs to Snowdy's Class Vehicles.[17]  (*See generally* Opp. Br).  Rather, Plaintiffs argue that Snowdy can properly assert a claim for breach of express warranty because the replacement EDU's in Snowdy's Class Vehicles were similarly defective and failed for a second time.  (Opp. Br. at 17 n.15 (citing Compl. ¶¶ 26–28)).  As such, if they can allege that his vehicle remains defective after "repeated repairs under the Warranty, then []he has sufficiently alleged that the limited remedy failed."  *Cox*, 2015 WL 5771400, at *7.

However, Snowdy does not allege that Defendants repeatedly attempted repairs on his Class Vehicles and were unsuccessful.  To be sure, the Complaint does allege that Defendants replaced the EDUs in both of Snowdy's Class Vehicles with new EDU's under warranty in 2017 when they initially failed.  (Compl. ¶ 25).  However, the Complaint does not allege that Snowdy

---

[17]     Though Plaintiffs allege that "Mercedes has failed and/or has refused to adequately provide the promised remedies within a reasonable time" (Compl. ¶ 444), such a conclusory allegation does not suffice.  *Rothschild*, 2020 WL 13581659, at *10.  And here, there is nothing to suggest that Defendants refused to repair the defects in Snowdy's Class Vehicles or unreasonably delayed in effectuating the repairs to Snowdy's Class Vehicles.  (*Id.* ¶¶ 25–28)

brought his Class Vehicles to Defendants for repairs at any other times during the warranty period. Thereafter, his Class Vehicles failed again outside of the warranty period. (*Id.* ¶¶ 26–28). And as stated, "an express warranty does not cover repairs made after the applicable time . . . ha[s] elapsed." *See Duquesne Light Co.*, 66 F.3d at 616. Further, after Snowdy's two Class Vehicles failed for a second time outside the warranty period, Snowdy sent his first vehicle to a company called QC Charge, which allegedly specializes in fixing EDUs, and sold his second vehicle, without seeking any repairs. (*Id.* ¶¶ 26–28). Snowdy's allegations, as currently pled, are insufficient to give rise to a plausible inference that he gave Defendants numerous opportunities to repair the Coolant Seal Defect.[18] Accordingly, as he has not sufficiently pled failure of the express warranties' essential purpose, his claims for breach of express warranty under New Jersey and New York law (Counts 18 and 21) must be dismissed. *See George v. Jaguar Land Rover N. Am. LLC*, No. 20-17561, 2021 WL 5195788, at *6 (D.N.J. Nov. 8, 2021) (finding that plaintiff failed to allege that the limited warranties failed of their essential purpose where he did not allege that he brought his vehicle to an authorized dealer for service multiple times to address the defect and only alleged that "after numerous updates and the most recent service," the alleged defect still manifests); *In re Subaru Battery Drain Prod. Liab. Litig.*, No. 20-03095, 2021 WL 1207791, at *14 (D.N.J. Mar. 31, 2021) (finding that warranty did not fail as to its essential purpose where plaintiffs gave defendants one attempt to repair their vehicles); *Rothschild*, 2020 WL 13581659, at *10 (finding that plaintiff failed to plead that warranty failed of its essential purpose where he

---

[18] To support their argument that the terms of the express warranty failed in their remedial purpose, Plaintiffs cite to *Coba v. Ford Motor Co.*, No. 12-1622, 2013 WL 244687, at *6 (D.N.J. Jan. 22, 2013), where the Court provided that "[t]o allow [a defendant] to satisfy the warranty by replacing one defective part with another equally defective part would render it meaningless." However, in *Coba*, the plaintiff alleged that he brought his vehicles to Ford on multiple occasions for repair, including under warranty. *Coba*, 2013 WL 244687, at *1–2. As such, the Court finds *Coba* distinguishable. Further, though Plaintiffs contend that Snowdy's claims for breach of express warranty can proceed because the warranty was unconscionable (Opp. Br. at 17 n.15), the Court finds that they have failed to plead unconscionability, as described above.

only needed to repair his vehicle on one occasion while it was under the warranty and remaining defects manifested outside warranty period).[19]

In sum, all of the named Plaintiffs' claims for breach of express warranty (Counts 9, 12, 16, 18, 21, 24 and 27) are dismissed.[20]

### G.    Implied Warranty Claims (Counts 10, 13, 17, 19, 22, 25, and 28)

Plaintiffs bring Counts 10, 13, 17, 19, 22, 25, and 28 for breach of the implied warranty of merchantability under the relevant laws of California, Florida, Georgia, New Jersey, New York, Oregon, and Texas.  These claims include violations of: (i) the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790, *et seq.* (Count 10); (ii) Fla. Stat. §§ 672.314 and 680.212 (Count 13); (iii) Ga. Code Ann. §§ 11-2-314 and 11-2A-212 (Count 17); (iv) N.J.S. 12A:2-314 and 2A-212 (Count 19); (v) N.Y. U.C.C. §§ 2-314, 2A-103, and 2A-212 (Count 22); (vi) Or. Rev. Stat. §§

---

[19]     Defendants also move to dismiss Plaintiffs' Express Warranty Claims under Counts 9, 12, 16, 18, 21, 24 and 27 because Plaintiffs have failed to sufficiently allege actionable misrepresentations or unconscionable practices. (*See* Mov. Br. at 29).  To start, as already discussed, the Court finds that Plaintiffs have failed to allege that any express warranty was unconscionable.  Further, to the extent that Plaintiffs claim that representations made by Defendants on their website and in promotional materials, advertisements, and brochures were sufficient to create an express warranty, the Court disagrees.  As already explained in Section III(E) in connection with Plaintiffs' fraud-based claims, the representations that Plaintiffs allege Defendants made with respect to the Class Vehicles consist of puffery and as such are insufficient to create any express warranty.  *Hughes*, 2011 WL 2976839, at *21; *Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1341 (S.D. Fla. 2013); *Johnson v. L'Oreal USA S/D, Inc.*, No. 19-0155, 2021 WL 2419455, at *3 (W.D. Tex. Mar. 16, 2021); *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 987 (N.D. Cal. 2009); *James v. Terex USA, LLC*, No. 16-0060, 2018 WL 6028705, at *8 (S.D. Ga. Nov. 16, 2018); *Feliciano*, 2016 WL 9344120, at *3.  To the extent Plaintiffs rely on a statement that appears to have been published by Mercedes on its website touting the importance and efficiency of the cooling system for the EDUs as the statement that created an express warranty, the Court again disagrees because that statement too appears to consist of puffery. (Compl. ¶ 137).  Further, none of the Plaintiffs allege that they were aware of this representation. (*See generally* Compl.).  As such, Plaintiffs have not sufficiently plead how this representation became the basis of the bargain to purchase their Class Vehicles. *Hughes*, 2011 WL 2976839, at *21; *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012); *Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 230 (S.D.N.Y. 2003); *In re Hardieplank Fiber Cement Siding Litig.*, 284 F. Supp. 3d 918, 933 (D. Minn. 2018); *Owens v. Mercedes-Benz USA, LLC*, 541 F. Supp. 2d 869, 873 (N.D. Tex. 2008); *Patrick Rojas v. Am. Honda Motor Co. Inc.*, No. 19-10136, 2020 WL 8515177, at *4 (C.D. Cal. Nov. 30, 2020).  As such, to the extent that Plaintiffs claim that representations made by Defendants on their website and in promotional materials, advertisements, and brochures were sufficient to create an express warranty, the Court disagrees.  And Plaintiffs set forth no argument in their Opposition Brief to show that such statements should be the basis for an express warranty.  As such, their express warranty claims must be dismissed in their entirety.

[20]     Because the Court finds that none of the named Plaintiffs have adequately alleged breach of the express warranty, the Court does not consider Defendants' remaining arguments in favor of dismissing these claims. (Mov. Br. at 19–21).

72.3140, 72.3150, 72A.1030, and 72A.2120 (Count 25); and (vii) Tex. Bus. & Com. Code §§ 2.314 and 2A.212 (Count 28).[21]  (Compl. ¶¶ 296–306, 337–47, 385–93, 406–14, 446–57, 498–509 & 539–47).

Defendants move to dismiss these claims.  (Mov. Br. at 22–25).  To start, they contend that Counts 10, 17, 19, 22, 25, and 28 are time barred.  (*Id.* at 24–25).  Further, they contend that Count 13 must be dismissed because Florida requires privity of contract for implied warranty claims.  (*Id.* at 25).  The Court considers these arguments in turn.

### i.   Statute of Limitations (Counts 10, 17, 19, 22, 25, and 28)

Defendants contend that Counts 10, 17, 19, 22, 25, and 28 are time barred because the relevant statute of limitations on implied warranty claims in California, Georgia, New Jersey, New York, Oregon, and Texas is four years, accruing from the date of delivery.  (*Id.* at 24–25).  And here, they point out that Liou, Clifford, Snowdy, Waiss, and Ramdhanny—who bring the claims in Counts 10, 17, 19, 22, 25, and 28—filed this action more than four years after the initial tender of delivery of their Class Vehicles was made.  (*Id.*).  In Opposition, Plaintiffs do not contest that Liou, Clifford, Snowdy, Waiss, and Ramdhanny filed this action more than four years after the initial tender of delivery of their Class Vehicles was made.  (*See* Opp. Br. at 28–29).  Rather, they contend that the statute of limitations for breach of implied warranty claims in California, Georgia, New Jersey, New York, Oregon, and Texas can be tolled in this case under the doctrine of fraudulent concealment.  (*Id.*).  For the reasons set forth below, the Court agrees with Defendants and finds that Counts 10, 17, 19, 22, 25, and 28 must be dismissed.

---

[21]     As discussed, the Court will not engage in a choice of law analysis at this juncture.  As such, the Court will apply general principles that cut across different states' laws, and will otherwise apply the laws as alleged by the Complaint.  *McCoy*, 2023 WL 6140641, at *3; *McMahon*, 2023 WL 4045156, at *15 n.18.

As Defendants point out (Mov. Br. at 24), the relevant statute of limitations on implied warranty claims in California (Count 10), Georgia (Count 17), New Jersey (Count 19), New York (Count 22), Oregon (Count 25), and Texas (Count 28) is four years, accruing on the date the vehicles were originally delivered.  *See Covarrubias v. Ford Motor Co.*, No. 19-1832, 2019 WL 2866046, at *3 (N.D. Cal. July 3, 2019*)* (Noting that the statute of limitations for implied warranty claims under the Song-Beverly Act is four years from the delivery of the vehicle); *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 886 (N.D. Cal. 2018), *order clarified*, No. 16-07244, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018), *and on reconsideration*, 438 F. Supp. 3d 1017 (N.D. Cal. 2020); *Paws Holdings, LLC*, 2017 WL 706624, at *14 (noting that there is a four-year statute of limitations for breach of express and implied warranty claims that begins to run—"when delivery or tender of delivery of the goods purchased was made.") (citing O.C.G.A. § 11-2-725)); *Jenner v. Volvo Cars of N. Am. LLC*, No. 15-6152, 2023 WL 2554697, at *3 (D.N.J. Mar. 17, 2023) ("Under New Jersey law, the statute of limitations for a breach of implied warranty of merchantability claim is four years," and "[t]he cause of action for breach of an implied warranty accrues 'when delivery of the product is made, regardless of the purchaser's lack of knowledge' of the defect" (citing N.J.S.A. § 12A:2-725)); *Orange Transportation Servs., Inc. v. Volvo Grp. N. Am., LLC*, 450 F. Supp. 3d 311, 320–21 (W.D.N.Y. 2020) (noting that there is a four-year limitations period for warranty claims under New York law and the "cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach" and that "[a] breach of warranty occurs when tender of delivery is made." (citing N.Y. U.C.C. § 2-725)); *Duncan*, 305 F. Supp. 3d at 320 (noting that statute of limitations for implied warranty claims in Texas and Oregon are four years (citing Or. Rev. Stat. § 72.7250 and Tex. Bus. & Com. Code § 2.725)); *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 845 (S.D. Tex. 2018).  And here,

Plaintiffs do not contest that the applicable statutes of limitations for Liou, Clifford, Snowdy, Waiss, and Ramdhanny's claims under California, Georgia, New Jersey, New York, Oregon, and Texas law is four years from when the initial tender of delivery was made, or that these Plaintiffs filed this action more than four years after the initial tender of delivery of their Class Vehicles was made. (*See* Opp. Br. at 28–29; Compl. ¶¶ 20–21, 32, 40, 63 & 71). Instead, Plaintiffs contend that the statute of limitations for these breach of implied warranty claims can be tolled under the doctrine of fraudulent concealment. (Opp. Br. at 28–29).

Under California, Georgia, New Jersey, New York, Oregon, and Texas law, the statute of limitations for an implied warranty claim can be tolled if a plaintiff demonstrates that the defendant engaged in some form of fraudulent concealment. *Diaz*, 2022 WL 4016744, at \*39 (stating that California federal district courts have recognized the applicability of fraudulent concealment tolling to claims brought under the Song-Beverly Act); *Paws Holdings, LLC*, 2017 WL 706624, at \*15 (same for Georgia law); *Jenner*, 2023 WL 2554697, at \*3 (same for New Jersey law); *Orange Transportation Services, Inc.*, 450 F. Supp. 3d at 321 (same for New York law); *Duncan*, 305 F. Supp. 3d at 320–21 (same for Oregon law); *Adams*, 395 F. Supp. 3d at 846 (same for Texas law). Generally, to adequately plead fraudulent concealment for purposes of tolling, a plaintiff must demonstrate: "(1) wrongful concealment by the [defendant], resulting in (2) plaintiff[']s failure to discover the operative facts forming the basis of [her] cause of action during the limitations period (3) despite the exercise of diligence." *Timing Chain*, 2017 WL 1902160, at \*14 (quoting *Dewey*, 558 F. Supp 2d at 523); *Covarrubias*, 2019 WL 2866046, at \*5; *Nalley v. Gen. Motors LLC*, No. 21-04174, 2022 WL 18459646, at \*3 (N.D. Ga. Aug. 30, 2022); *Orange Transportation Services, Inc.*, 450 F. Supp. 3d at 321; *Duncan*, 305 F. Supp. 3d at 320–21; *Adams*, 395 F. Supp. 3d at 846–47.

Citing to the same allegations they relied on to support their fraud-based claims, Plaintiffs contend that they have adequately alleged fraudulent concealment tolling because they have set forth facts showing that Defendants knew of the Coolant Seal Defect, made misleading misrepresentations regarding the vehicles' performance that in turn created a duty to disclose the defect, and failed to disclose the Defect, even as consumers began reporting failures. (Opp. Br. at 28–29). As a result of these misrepresentations, concealments, and failures to disclose, Plaintiffs contend that they failed to discover the defect during the limitations period, despite their exercise of diligence. (*Id.* at 29). However, as already discussed in Section III(E), here, Plaintiffs have failed to allege any facts plausibly indicating that Defendants knew of the Coolant Seal Defect, knowingly concealed facts regarding the Coolant Seal Defect, or made fraudulent misrepresentations or omissions. As such, they have not adequately alleged fraudulent concealment tolling. *See Diaz*, 2022 WL 4016744, at *40 (finding that the plaintiffs failed to allege fraudulent concealment tolling where they set forth no facts indicating that defendant had knowledge of the defect); *Covarrubias*, 2019 WL 2866046, at *5 (finding that the plaintiff failed to allege fraudulent concealment tolling where the complaint set forth no facts such that court could infer defendants were aware of a systemic defect and intentionally withheld information from consumers); *Paws Holdings, LLC*, 2017 WL 706624, at *15 (finding that the plaintiff could not toll statute of limitations because the plaintiff failed to plead any positive or affirmative act by defendants that concealed the warranty-based causes of action); *Orange Transportation Services, Inc.*, 450 F. Supp. 3d at 323; *Adams*, 395 F. Supp. 3d at 847–48. Because Plaintiffs do not contest that Liou, Clifford, Snowdy, Waiss, and Ramdhanny filed this action more than four years after the initial tender of delivery of their Class Vehicles was made and because they have not adequately alleged fraudulent concealment tolling, their claims for breach of the implied warranty

of merchantability under California (Count 10), Georgia (Count 17), New Jersey (Count 19), New York (Count 22), Oregon (Count 25), and Texas (Count 28) law must be dismissed as time barred.

### ii.      Privity (Count 13)

Defendants contend that Plaintiff Jones's implied warranty claim under Florida law (Count 13) must be dismissed due to a lack of privity. (Mov. Br. at 25). Specifically, Defendants point out that Plaintiff Jones does not allege that he purchased or leased his vehicle from either MBG or MBUSA. (*Id.*). As such, they contend that privity is lacking and as a result Count 13 must be dismissed. (*Id.*). In Opposition, Plaintiffs contend that they fall under a third-party beneficiary exception to the contractual privity requirement as they were intended beneficiaries of the warranty. (Opp. Br. at 29 n.27). For the reasons set forth below, the Court agrees with Defendants and finds that Count 13 must be dismissed.

Florida law requires privity to maintain a claim for breach of implied warranty. *Mesa v. BMW of N. Am.*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005). That is, a consumer must purchase the product from the supplier because "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Fla. Stat. § 672.314(1). A purchase from a dealership does not establish privity with a manufacturer. *Bailey v. Monaco Coach Corp.*, 168 Fed. App'x. 893, 894 (11th Cir. 2006); *Padilla v. Porsche Cars N. Am.*, 391 F. Supp. 3d 1108, 1119 (S.D. Fla. 2019). Here, as Defendants point out (Mov. Br. at 25), Plaintiff Jones does not allege that he purchased his Class Vehicle from either MBG or MBUSA. Rather, he alleges that he "bought a used 2014 B-Class EV Mercedes with 9,000 miles from Mercedes-Benz Financial Services USA." (Compl. ¶ 51). This is insufficient to establish privity. *Padilla*, 391 F. Supp. 3d at 1119.

Plaintiffs do not contest that Jones cannot establish privity. (*See* Opp. Br. at 29–30). Rather, Plaintiffs argue that an exception to the privity requirement exists where the buyer is the intended third-party beneficiary of the initial sale. (*Id.* at 29 n.27). There is a split of authority regarding whether Florida recognizes a third-party beneficiary exception to the privity requirement. Several courts have found that Florida does recognize such an exception. *See Weiss v. Gen. Motors LLC*, 418 F. Supp. 3d 1173, 1182–83 (S.D. Fla. 2019); *Sanchez-Knutson v. Ford Motor Co.*, 52 F. Supp. 3d 1223, 1234 (S.D. Fla. 2014). Other courts have emphasized that Florida does not recognize a third-party beneficiary exception to the privity requirement. *See Valiente v. Unilever United States, Inc.*, No. 22-21507, 2022 WL 18587887, at *14 (S.D. Fla. Dec. 8, 2022); *Padilla*, 391 F. Supp. 3d at 1116–17.

The Court need not resolve this issue because even if the third-party beneficiary rule applies, Plaintiff Jones's claim fails. Under the line of cases that recognize that a plaintiff can establish privity as a third-party beneficiary, a plaintiff can establish privity if: (i) he alleges that he purchased a vehicle from an authorized dealer who was an agent of a defendant; (ii) he was the intended consumer of the vehicle; (iii) the dealership was not the intended consumer; and (iv) the warranty was intended to benefit the consumer. *Sanchez-Knutson*, 52 F. Supp. 3d at 1234. Here, though Plaintiffs contend that Jones purchased his vehicle from an agent of Mercedes (Opp. Br. at 25), the Complaint fails to allege that Mercedes-Benz Financial Services USA—the entity from which Jones purchased his used vehicle—was an authorized dealer who was an agent of the Defendants.[22] (*See generally* Compl.). Without such allegations, the Court cannot plausibly infer

---

[22] Though Plaintiffs point out in opposition that Mercedes-Bens Financial Services USA is a "business unit of Mercedes-Benz Mobility AG" and Mercedes-Benz Mobility AG "is the financial and mobility services division of Mercedes-Benz" (Opp. Br. at 24), no such allegations appear in the Complaint. Regardless, Plaintiffs fail to explain how these relationships establish that Mercedes-Benz Financial Services USA was an authorized dealer who was an agent of the Defendants.

that the third-party beneficiary exception to the privity requirement applies in this case. *Murphy v. Toyota Motor Sales USA Inc.*, No. 20-5892, 2021 WL 2801456, at *5 (C.D. Cal. Apr. 21, 2021) (finding that even if Florida did recognize third-party beneficiary exception, such an exception did not apply because complaint failed to allege an agency relationship). As such, because Jones has failed to establish privity, his claim for breach of the implied warranty of merchantability (Count 13) must be dismissed.

In sum, all of the named Plaintiffs' claims for breach of implied warranty (Counts 10, 13, 17, 19, 22, 25, and 28) are dismissed.[23]

## IV. CONCLUSION

In sum, the Court finds that all of the claims in Plaintiffs' Complaint must be dismissed.[24] However, they are dismissed *without prejudice*. The Court cannot rule out the possibility that Plaintiffs might amend their Complaint to assert viable claims. *See Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, 14 F. Supp. 3d 591, 596 (D.N.J. 2014) (Dismissal of a complaint with prejudice is a "'harsh remedy'" that "is [only] appropriate if amendment would be inequitable or futile."). Based on the foregoing, Defendants' motion (D.E. No. 21) is **GRANTED** and Plaintiffs' Complaint is dismissed *without prejudice*. An appropriate Order accompanies this Opinion.

Dated: April 1, 2024                                     *s/ Esther Salas*
                                                         **Esther Salas, U.S.D.J.**

---

[23]     Because the Court finds that none of the named Plaintiffs have adequately alleged breach of the implied warranty, the Court does not consider Defendants' remaining arguments in favor of dismissing these claims. (Mov. Br. at 22–24).

[24]     Because the Court finds that all claims in Plaintiffs' Complaint must be dismissed, it does not address Defendants' remaining arguments in favor of dismissing these claims. (Mov. Br. at 9–10).