**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN SNOWDY, ABRAHAM DEAN LIOU, JOSHUA DEUTSCH, DELL JONES, KELSEY CLIFFORD, RICHARD RAMDHANNY, AND BRANDON WAISS, Individually and on behalf of all others similarly situated, *Plaintiffs*, v. MERCEDES-BENZ USA, LLC and MERCEDES-BENZ GROUP AG f/k/a DAIMLER AG, *Defendants*. | Civil Action No. 23-1681 **ORDER** October 13, 2025 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendants Mercedes-Benz USA, LLC and Mercedes-Benz Group AG f/k/a Daimler AG's ("Defendants") Motion to Dismiss (ECF 47, "Motion" or "Mot.") Plaintiffs Stephen Snowdy, Abraham Dean Liou, Joshua Deutsch, Dell Jones, Kelsey Clifford, Richard Ramdhanny, and Brandon Waiss's ("Plaintiffs") First Amended Complaint (ECF 42, "FAC"). Plaintiffs opposed the Motion. (ECF 48, "Opposition" or "Opp.") Defendants replied in support of the Motion. (ECF 49, "Reply.") The Court has decided this motion upon the submission of the parties, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion is **GRANTED**.

1

I.      **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**[1]

This putative class action arises from an alleged defect that "causes the electric motors in 2014-2017 Mercedes B-Class Electric Vehicles ("B-Class EVs" or "Class Vehicles") to degrade and abruptly fail, leaving the vehicle inoperable." (FAC ¶ 1.) Plaintiffs allege that the defect is caused by defective drive shaft seals in the Class Vehicles that fail in their task of keeping coolant from contacting—and thereby corroding—the Electric Drive Units ("EDUs") that are essential to the functioning of the cars. (*Id.* ¶¶ 2-5.) Plaintiffs refer to this defect as the "Coolant Seal Defect." (*Id.* ¶ 4.) Defendants are (i) Mecedes-Benz USA, LLC ("MBUSA"), a Delaware corporation headquartered in Atlanta, Georgia that was allegedly responsible for performing activities including, but not limited to, "advertising, warranties, warranty repairs, dissemination of technical information, and monitoring the performance of Mercedes-Benz vehicles in the United States"; and (ii) Mercedes-Benz Group AG ("MBG"), a German corporation that "engaged in the business of designing, engineering, manufacturing, testing, marketing, supplying, selling, and distributing motor vehicles, including the Class Vehicles." (*Id.* ¶¶ 146-169.) Plaintiffs are consumers who either purchased or leased at least one of the allegedly defective Class Vehicles. (*Id.* ¶¶ 76–145.)

Plaintiffs allege that Defendants had or must have had pre-sale knowledge of the Coolant Seal Defect because Defendants partnered with Tesla Motors, Inc. to develop the EDUs at issue, and Tesla knew of the defect as early as 2014. (*Id.* ¶¶ 22-26.) Specifically, Plaintiffs point to a 10-K filing Tesla made with the Securities and Exchange Commission in 2014 in which the company stated: "Our vehicles or vehicles that contain our powertrains such as the Toyota RAV4

---

[1] The facts and procedural history are drawn from the Complaint (ECF 1). *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

EV or the Mercedes-Benz B-Class EV may contain defects in design and manufacture that may cause them not to perform as expected or that may require repair." (*Id.* ¶ 27.) Plaintiffs also allege that Defendants conducted extensive pre-sale testing of the Class Vehicles which "[u]pon information and belief, revealed the Coolant Seal Defect." (*Id.* ¶¶ 30-40.)

Plaintiffs further allege that Defendants "knowingly manufactured, marketed, and sold the Class Vehicles and their Defective EDUs while willfully concealing the Coolant Seal Defect from Class Members and Plaintiffs." (*Id.* ¶ 41.) Plaintiffs allege that Defendants "held out the Class Vehicles as Having superior engineering and performance" and "jointly developed sales and marketing materials, including on the Mercedes website that included no reference to or notice about the Coolant Seal Defect." (*Id.* ¶¶44-45.) Plaintiffs point specifically to statements on the Mercedes website that touted the output capabilities of the electric motor systems, the efficiency benefits of the thermal management system in Class Vehicles' EDUs, and the Class Vehicles' performance through 160,000 kilometers of use. (*Id.* ¶¶ 46-48.)

Plaintiffs also allege that the terms of the express warranties that Defendants provided in connection with the purchase or lease of the Class Vehicles are unconscionable because "Defendants have wrongfully and intentionally transferred the cost of repair or replacement of the seal and/or the entire EDU to Plaintiffs and Class Members by fraudulently concealing the existence of the Coolant Seal Defect, which Defendants know will typically occur shortly after the expiration of the warranties." (*Id.* ¶¶ 64.) Plaintiffs also allege that they are "intended third-party beneficiaries of contracts between Mercedes and dealers of the Class Vehicles" because these agreements were executed "with the direct goal of keeping customers, including Plaintiffs, brand loyal." (*Id.* ¶¶ 69-70.)

3

Plaintiffs initiated this lawsuit by filing the original Complaint on March 24, 2023. (*See generally* ECF 1, "Complaint" or "Compl.") Defendants filed a motion to dismiss the original Complaint (ECF 21) and after opposition and reply briefing (ECF 25, ECF 28), the Court granted the motion to dismiss without prejudice in its Order dated March 28, 2024 (ECF 35), and its Opinion, dated April 1, 2024 (ECF 37, "Opinion" or "Op."). Following this Court's Opinion dated April 1, 2024 dismissing the Complaint without prejudice, Plaintiffs filed the FAC adding Plaintiff Joshua Deutsch and dropping the original Count 1 for unjust enrichment. On May 30, 2024, Plaintiffs filed the FAC. (FAC.) The FAC contains 27 counts as follows: Count 1: negligent misrepresentation; Count 2: fraud by omission or fraudulent concealment; Count 3: unconscionable commercial practices under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2, *et seq.*; Count 4: misrepresentations, deception, and/or omissions under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-2, *et seq.*; Count 5: violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*; Count 6: violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; Count 7: violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; Count 8: breach of express warranty under the Song-Beverly Consumer Warranty Act, Cal Civ. Code § 1790, *et seq.*; Count 9: breach of implied warranty under the Song-Beverly Consumer Warranty Act, Cal Civ. Code § 1790, *et seq.*; Count 10: violation of the Florida Deceptive & Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.*; Count 11: breach of express warranty under Fla. Stat. §§ 672.313 and 680.21; Count 12: breach of implied warranty of merchantability under Fla. Stat. §§ 672.314 and 680.212; Count 13: violation of Georgia's Uniform Deceptive Trade Practices Act, Ga. Code Ann. § 10-1-370, *et seq.*; Count 14: violation of Georgia's Fair Business Practices Act, Ga. Code Ann. § 10-1-390, *et seq.*; Count 15: breach of express warranty under Ga. Code

4

Ann. §§ 11-2-313 and 11-2A-210; Count 16: breach of implied warranty of merchantability under Ga. Code Ann. §§ 11-2-314 and 11-2A-212; Count 17: breach of express warranty under N.J.S. 12A:2-313 and 2A-210; Count 18: breach of implied warranty of merchantability under N.J.S. 12A:2-314 and 2A-212; Count 19: violation of the New York General Business Law, N.Y. Gen. Bus. Law § 349; Count 20: breach of express warranty under N.Y. U.C.C. Law §§ 2-313, 2A-103, 2A-210; Count 21: breach of implied warranty of merchantability under N.Y. U.C.C. Law §§ 2-314, 2A-103, 2A-212; Count 22: violation of the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq.*; Count 23: breach of express warranty under Or. Rev. Stat. §§ 72.3130, 72A.1030, and 72A.2100; Count 24: breach of implied warranty under Or. Rev. Stat. § 72.3140, 72.3150, 72A.1030, and 72A.2120; Count 25: violation of the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Bus. & Com. Code §§ 17.41, *et seq.*; Count 26: breach of express warranty under Tex. Bus. & Com. Code §§2.313 and 2A.210; Count 27: breach of implied warranty of merchantability under Tex. Bus. & Com. Code §§ 2.314 and 2A.212. (*Id*. ¶¶ 201-557.) For relief, Plaintiffs seek certification of the proposed Nationwide Class and State Sub-Classes; appointment of Plaintiffs' counsel as Class Counsel; a declaratory judgment that the EDUs in the Class Vehicles contain the Coolant Seal Defect which requires disclosure; an injunction requiring Defendants to treat problems arising from the Coolant Seal Defect, to reassess all prior warranty claims relating to the defect, and pay the cost of inspection to determine if the defect is present in the Class Members' vehicles; restitution for the purchase price of the Class Vehicles; damages; pre-judgment interest; and attorneys' fees and costs of suit. (*Id*. at 109-108.)

On September 16, 2024, Defendants filed the instant Motion to Dismiss. (Mot.) On September 17, 2024, Plaintiffs filed their Opposition (Opp.) and Defendants filed their Reply (Reply).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id*. at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). The court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorably to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-02945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

"When a complaint involves allegations of fraud, a plaintiff must meet the heightened pleading requirements of Rule 9(b) to state a claim under Rule 12(b)(6)." *Franchitti v. Cognizant Tech. Sols. Corp.*, 555 F. Supp. 3d 63, 68 (D.N.J. 2021) (citing *Foglia v. Renal Ventures Mgmt., LLC*, 754 F.3d 153, 155 (3d Cir. 2014)); *see also* Fed. R. Civ. P. 9(b) (stating that a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud," though conditions of the mind such as knowledge may be pled generally). "In order to satisfy Rule 9(b), a complaint must provide 'all of the essential factual background that would accompany the first paragraph of any newspaper story' — that is, the 'who, what, when, where and how' of the events at issue.'" *United States v. Eastwick Coll.*, 657 F. App'x 89, 93 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Secs. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). This standard has been relaxed slightly for fraudulent omission claims where pleading specific times and places may not be practicable and, instead, Rule 9(b) may be satisfied by "alleg[ing] what the omissions were, the person responsible for failing to disclose the information, the context of the omission and the manner in which it misled plaintiff and what defendant obtained through the fraud." *See Johansson v. Cent. Garden & Pet Co.*, 804 F. Supp. 2d 257, 264 (D.N.J. 2011) (quoting *Luppino v. Mercedes-Benz USA, LLC*, No. 09-5582, 2010 WL 3258259, at *7 (D.N.J. Aug. 16, 2010))

### III.   ANALYSIS

As a threshold matter, the Court adopts and reiterates the conclusions articulated in the prior Opinion in this case regarding choice of law. (Op. at 22-26.) As such, "at this stage, the Court will apply the laws as briefed by the parties: the Court will apply New Jersey law or general principles that cut across different states' laws but analyze state-specific law or causes of action as appropriate." (*Id.* at 26, citing *McCoy v. Samsung Elecs. Am., Inc.*, No. 21-19470, 2023 WL 6140641, at *3 (D.N.J. Sept. 20, 2023).)

a. **Pre-Sale Knowledge**

As articulated in this Court's prior Opinion, pre-sale knowledge of the defect is an essential element of every count of the Complaint, and the same is true here. (*See* Op. at 51, 58, 65-66.) Defendants contend that Plaintiffs "do not show knowledge by MBG or MBUSA that there was an issue with [the Class Vehicles'] EDUs at all, let alone *before* any of the class vehicles were sold." (Mot. at 9, emphasis in original.) Defendants also argue that Plaintiffs' allegations that pre-sale testing revealed the Coolant Seal Defect are insufficient because they "do not explain ***how*** a single one of these tests actually showed the claimed defect in the EDUs." (*Id*. at 9-10 (emphasis in original).)

In their Opposition, Plaintiffs argue that "'[i]t is not necessary for the plaintiff to plead evidence.'" (Opp. at 7 (citing *Cohen v. Subaru of Am., Inc.*, 2022 WL 721307, *5 (D.N.J. Mar. 10, 2022) and *Bogosian v. Gulf Oil Corp.*, 561 F.2d 434, 446 (3d Cir. 1977)).) Plaintiffs assert that "based on [the facts as pled], 'the circumstances surrounding such general allegations of knowledge suffice to infer what defendant is alleged to have known and when…particularly when combined with the allegations of knowledge of the coolant leak gained through Mercedes' years-long engineering collaboration with Tesla." (*Id*. (citing *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 21-18755, 2023 WL 6890996, at *26 (D.N.J. Oct. 19, 2023)).)

In their Reply, Defendants argue that "[a]ll that is new in the FAC is some generic descriptions of industry tests, which then are followed by allegations 'upon information and belief' that, because of the alleged parameters of the testing, the EDUs essentially should have experienced 'seal installation failure or other symptoms of the alleged defect." (Reply at 2 (citing FAC ¶¶ 34-40).) Defendants draw distinctions between *Tijerina* and *Cohen* and this case, noting that that "in those cases, the plaintiffs, unlike here, cited ***other*** sources of knowledge—including

8

a recall issued by the defendant and significant analyses of NHTSA data that pre-dated plaintiffs' purchases and showed a large number of reports for the specific alleged defect in the vehicles at issue." (*Id*. at 4 (emphasis in original).)

Plaintiffs' contention that Defendants must have learned of the Coolant Seal Defect from their collaboration with Tesla and from statements Tesla made in its 10-K filing in for the year ending December 31, 2014, is unpersuasive. The claim fails for the same reasons articulated by the Court in its prior Opinion, namely that "Tesla did not admit that the EDUs in the B-Class Vehicles were *actually* defective. They were merely speculating that some of those vehicles '*may* contain defects' or '*may* require repair.'" (Op. at 49 (emphasis in original).) Plaintiffs' claims that Defendants must have acquired pre-sale knowledge of the defect from the testing they conducted on the various components of the Class Vehicles suffer the same fate. While Plaintiffs have augmented their initial pleading with additional color about the nature and purpose of the tests, which they allege should have led Defendants to learn of defect, Plaintiffs do not point to facts suggesting the testing did reveal the Coolant Seal Defect. These claims remain the sort of "unwarranted conclusions" which the Court is "not compelled to accept." *Baraka*, 481 F.3d at 211.

Plaintiffs' invocation of *Tijerina* is distinguishable from this case because there, unlike here, plaintiffs pled additional specific facts related to sources such as time-stamped customer complaints that served to corroborate the assertion that the defendants acquired knowledge of the claimed defect prior to selling the vehicles at issue. *Tijerina*, 2023 WL 6890996, at *26 ("[Plaintiffs] aver VW America and VWAG had this information based on pre-production testing, crash testing, design failure mode analyses, and consumer complaints. Plaintiffs identify complaints with dates to support their allegations that VW America and VWAG were aware of the

9

Seat Defect.") (internal citations omitted). The same can be said of *Bullard v. Jaguar Land Rover Auto., PLC*, No. 20-14464, 2023 WL 4845873 (D.N.J. July 28, 2023), which Plaintiffs also rely on to support their argument that they have sufficiently pled pre-sale knowledge of the defect. In *Bullard*, "Plaintiffs allege[d] post-production testing as well. They claim[ed] that Defendants also tested Turbochargers replaced under warranty and returned to Defendants for analysis and storage." *Bullard*, 2023 WL 4845873, at *5. Likewise, in *Ponzio v. Mercedes-Benz, USA, LLC*, the Court denied the motion to dismiss because of the totality of the pleadings, wherein plaintiffs made plausible allegations that defendants had acquired pre-sale knowledge of the defect at issue through testing, service bulletins, and other channels. 447 F. Supp. 3d 194, 227-231 (D.N.J. Mar. 11, 2020). Here, Plaintiffs more detailed allegations of pre-sale knowledge acquired through product testing effectively stand alone, unsupported by any other credible allegations sufficient to support a "plausible inference that Defendants had knowledge of the Coolant Seal Defect that Plaintiffs describe in their Complaint either at the time of sale or lease of any of the Plaintiffs' Class Vehicles or any time thereafter." (Op. at 50.)

As such, the Court dismisses all counts for which pre-sale knowledge is a necessary element: every count of the Complaint. These include all the statutory, common law, and common law fraud claims: Counts 1-7, 10, 13, 14, 19, 22, and 25. Pre-sale knowledge is also an essential pre-requisite necessary to plead unconscionability to sustain the breach of express warranty claims (Counts 8, 11, 15, 17, 20, and 23), so these claims must also be dismissed. Lastly, the breach of implied warranty claims (Count 9, 12, 16, 18, 21, 24, and 27) also fail for the same reason.

## IV. CONCLUSION

Accordingly, Defendants' Motion to Dismiss the FAC is hereby **GRANTED** and all counts of the FAC are **DISMISSED without prejudice**. An appropriate order follows.

/s/ *Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Andre M. Espinosa, U.S.M.J.
      Parties